PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-3438
_____

HELEN MINING COMPANY,
                              Petitioner

v.

DIRECTOR OWCP, UNITED STATES
DEPARTMENT OF LABOR; JOHN OBUSH,
                              Respondent
_____

On Petition for Review of the Decision and Order of the
Benefits Review Board, United States Department of Labor
(BRB-1:  No. 08-0671BLA)
_____

ARGUED OCTOBER 19, 2010

BEFORE:  HARDIMAN, GREENAWAY, JR., and
NYGAARD, Circuit Judges.

(Filed: April 12, 2011)

William S. Mattingly, Esq. (Argued)
Jackson Kelly
150 Clay Street, Suite 500
Morgantown, WV  26507

Counsel for Petitioner

Robert J. Bilonick, Esq. (Argued)
Pawlowski Bilonick & Long
603 North Julian Street
P. O. Box 658
Ebensburg, PA  15931

Counsel for Respondent, John Obush

Helen Hart Cox, Esq.
United States Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W., N-2117
Washington, DC  20210

Counsel for Respondent,
U. S. Department of Labor

_____

OPINION OF THE COURT
_____

NYGAARD, Circuit Judge.

Helen Mining petitions this Court to review the United States Department of Labor Benefits Review Board's decision that affirmed an award of disability benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945, to miner John Obush. Helen Mining asserts that Obush's claim is time-barred and that the award is not supported by substantial evidence. We will deny the petition for review.

I.

John Obush worked in the mines for forty-two years, retiring in 1990 at age sixty-two. Helen Mining employed Obush from 1975 to 1990. He worked last as a shuttle car operator. On July 11, 1989, before retiring, Obush filed a claim for black lung benefits. In support of O'Bush's claim, Dr. Phillip Turco opined that Obush had coal worker's pneumoconiosis from exposure to coal dust during his employment in the mines that resulted in permanent disability. On May 23, 1991, however, Administrative Law Judge Gerald Tierney denied the claim, pursuant to 20 C.F.R. § 718.202(a)(1)-(4), discrediting Dr. Turco's medical opinion and relying upon two doctors with "qualifications superior to Dr. Turco" who attributed Obush's pulmonary impairment to smoking. Obush did not contest this decision.

Obush filed a subsequent claim for black lung benefits on January 31, 2006.[1] Five doctors examined Obush and/or

---

[1] Department of Labor regulations specify that subsequent claims may be filed where "there has been a material change in conditions." 20 C.F.R. § 725.309(d).

3

his medical records in connection with this claim. Three doctors opined that Obush had a severe respiratory impairment causing total disability arising from work-related exposure to coal dust.[2] Of the remaining two doctors, one opined that he could neither find nor rule out that Obush's severe respiratory impairment was due to his exposure to coal dust. The last doctor opined that there was no evidence of either clinical pneumoconiosis or legal pneumoconiosis.[3]

Helen Mining conceded that Obush has a totally disabling respiratory impairment and that his condition changed since the denial of his prior claim, but asserted his claim was time-barred based upon the prior denial of benefits. ALJ Thomas Burke issued a decision on May 29, 2008. He determined that the claim was not time-barred, holding that the statute of limitations does not apply to claims subsequent to the initial claim. He then concluded that, although the x-rays did not evince pneumoconiosis, the weight of medical

---

[2] Two of these doctors found that the exam and records supported a diagnosis of clinical pneumoconiosis, but made separate conclusions that Obush's condition met the definition of legal pneumoconiosis. The third doctor diagnosed only legal pneumoconiosis. These exams occurred between December, 2005 and March, 2006.

[3] "'Legal pneumoconiosis' includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment. This definition includes, but is not limited to, any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment." 20 C.F.R. § 718.201.

opinion evidence supported a determination of legal pneumoconiosis. ALJ Burke awarded benefits.

Although the Board affirmed the award of benefits, it concluded that the claim was not time-barred for reasons different from those of ALJ Burke. The Board held that the statute of limitations applies to all claims (initial and subsequent), but concluded that Dr. Turco's finding of pneumoconiosis, which was the basis of Obush's 1989 claim, was legally insufficient to trigger the statute of limitations as to the present case because ALJ Tierney discredited Dr. Turco's finding and denied the claim.

Helen Mining now petitions this Court to review the decision of the Benefits Review Board, arguing that the 2006 claim was time-barred and, in the alternative, that substantial evidence does not support an award of benefits. We will deny the petition.

II.

We first address the statute of limitations, which reads as follows:[4]

> Any claim for benefits by a miner
> under this section shall be filed

_____

[4] The Benefits Review Board had jurisdiction to review the final decision of the ALJ under 33 U.S.C. § 921(b)(3), as incorporated into the Black Lung Benefits Act, 30 U.S.C. §§ 901-945, by 30 U.S.C. § 932(a). "We have jurisdiction over the [Benefit Review Board's] final order pursuant to 33 U.S.C. § 921(c), as incorporated by 30 U.S.C. § 932(a)." *Labelle Processing Co. v. Swarrow*, 72 F.3d 308, 310 (3d Cir. 1995). Our review of questions of law is plenary. *Id.* at 313.

5

within three years after whichever of the following occurs later—(1) *a medical determination of total disability due to pneumoconiosis . . . .*

30 U.S.C. § 932(f) (emphasis added). The implementing regulation states the following:

(a) A claim for benefits filed under this part by, or on behalf of, a miner shall be filed *within three years after a medical determination of total disability due to pneumoconiosis* which has been communicated to the miner or a person responsible for the care of the miner, or within three years after the date of enactment of the Black Lung Benefits Reform Act of 1977, whichever is later. There is no time limit on the filing of a claim by the survivor of a miner.

20 C.F.R. § 725.308 (emphasis added). At issue is whether the phrase "a medical determination of medical disability due to pneumoconiosis"—a phrase that is not defined in either the statute or the regulation—mandates a conclusion that Obush's claim is time-barred.

The Board, relying upon the reasoning of three courts of appeals, held that "a medical determination of total

6

disability due to pneumoconiosis predating a prior, final denial of benefits is deemed a misdiagnosis and thus, cannot trigger the statute of limitations for filing a subsequent claim." *J.O. v. Helen Mining*, 24 B.L.R. 1-119, 1-122 (Ben. Rev. Bd. June 24, 2009); *see Arch of Kentucky, Inc. v. Director, Officer of Workers' Compensation Programs*, 556 F.3d 472, 483 (6th Cir. 2009); *Consolidated Coal Co. v. Williams*, 453 F.3d 609, 618 (4th Cir. 2006); *Wyoming Fuel Co. v. Director, Office of Workers' Compensation Programs*, 90 F.3d 1502, 1507 (10th Cir. 1996). Upon this basis, the Board decided that Obush's 2006 claim was not time-barred. We are persuaded by the analyses of these courts of appeals and agree with the Board's conclusion that the statute of limitations does not bar Obush's 2006 claim.

Though the time-bar issue is one of first impression, we have already addressed a related issue with respect to black lung benefit claims, and so we begin there. In *Labelle Processing Co. v. Swarrow*, the employer asserted—based upon the denial of the miner's initial claim—that res judicata barred an award of benefits on the subsequent claim. 72 F.3d 308 (3d Cir. 1995). Noting that a subsequent claim must be grounded in evidence of a material change in the miner's condition, we held that "new facts (i.e., events occurring after the events giving rise to the earlier claim) may give rise to a new claim, which is not precluded by the earlier judgment." *Id.* at 314. We then concluded that:

> Although it is true that Swarrow is now precluded from collaterally attacking the prior denial of benefits, Swarrow may file a new claim, asserting that he is now

7

> eligible for benefits because he has become totally disabled due to coal miner's pneumoconiosis and that his disability occurred subsequent to the prior adjudication.

*Id.* By the same reasoning, because we are required to respect the factual findings and legal conclusions in earlier adjudicated claims, we must accept an ALJ's conclusion that a medical opinion offered in support of that claim is discredited. On this basis, we regard such a medical opinion as a misdiagnosis. *See Arch of Kentucky*, 556 F.3d at 483.

Helen Mining argues that construing section 932 in a manner that is consistent with *Arch of Kentucky* is contrary to the plain language of the statute and contravenes Congressional intent. Quoting *United States v. Kubrick*, Helen Mining states that "[i]t goes without saying that statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims." 444 U.S. 111, 125 (1979). However, as acknowledged in *Kubrick*, statutes of limitations must be given effect in a manner that is consistent with legislative intent. *Id.*

"The courts have repeatedly recognized that the remedial nature of the statute requires a liberal construction of the Black Lung entitlement program to ensure widespread benefits to miners and their dependents." *Keating v. Director, Office of Workers' Compensation Programs*, 71 F.3d 1118, 1122 (3d Cir. 1995). Consequently, "the Act must be applied in a manner which assures compensation to every miner who suffers from any of the several lung impairments

8

covered by the Black Lung Benefits Act." *Pavesi v. Director, Office of Workers' Compensation Programs*, 758 F.2d 956, 965 (3d Cir. 1985). As the Court of Appeals for the Sixth Circuit has stated, the Act must be read "to include the largest numbers of miners as benefit recipients." *Peabody Coal Co. v. Hill*, 123 F.3d 412, 415 (6th Cir. 1997).

Moreover, with regard to the implementing regulations, 20 C.F.R. § 718.201 states that "[f]or purposes of this definition, 'pneumoconiosis' is recognized as a latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure." Helen Mining cites a decision of the Court of Appeals for the District of Columbia for the proposition that pneumoconiosis cannot be properly characterized as latent and progressive. *See National Mining Association v. Department of Labor*, 292 F.3d 849, 863-64 (D.C. Cir. 2002). However, Helen Mining misreads the decision. *See Midland Coal Co. v. Director, Office of Workers' Compensation Programs,* 358 F.3d 486, 490-91 (7th Cir. 2004).[5] Moreover, this regulation provides

---

[5] "Midland interprets this language as a positive command that a claimant bringing a subsequent application must prove that she suffers from the particular kinds of pneumoconiosis that have been found in the medical literature to be progressive and/or latent. But that is not what the D.C. Circuit said, and more importantly, the regulation itself is not so limited. The rule is instead designed to 'prevent[ ] operators from claiming that pneumoconiosis is never latent and progressive.'" *Midland Coal Co. v. Director, Office of Workers' Compensation Programs*, 358 F.3d at 491 (quoting *National Mining Association*, 292 F.3d at 863).

solid support for reading the statute of limitations in an expansive manner to ensure that any miner who has been afflicted with the disease, including its progressive form, is given every opportunity to prove he is entitled to benefits.

Finally, a restrictive interpretation of the statute of limitations, as suggested by Helen Mining, would be in tension with the regulation that enables miners to file subsequent claims. *See* 20 C.F.R. § 725.309(d).[6] The very fact that successive claims are permitted—on evidence of material changes to the health of a miner—makes an interpretation of the statute of limitations that effectively precludes such claims untenable.[7] Therefore, we regard the analysis of section 932 provided in *Consolidated Coal*, *Arch*

---

[6] 20 CFR § 725.309(d). "A subsequent claim shall be processed and adjudicated in accordance with the provisions of subparts E and F of this part, except that the claim shall be denied unless the claimant demonstrates that one of the applicable conditions of entitlement (see §§ 725.202(d) (miner), 725.212 (spouse), 725.218 (child), and 725.222 (parent, brother, or sister)) has changed since the date upon which the order denying the prior claim became final."

[7] Moreover, as stated by the Court of Appeals for the Fourth Circuit: "[W]e note that [the doctor's] diagnosis, which related solely to [the miner's] condition in 1995, could not have sustained a subsequent claim that his condition had materially worsened since the initial denial of benefits in 1996. It would be illogical and inequitable to hold that a diagnosis that could not sustain a subsequent claim could nevertheless trigger the statute of limitations for such a claim." *Consolidated Coal Co*., 453 F.3d at 617-18.

10

*of Kentucky,* and *Wyoming Fuel* as consistent with, both, a legislative intent to favor miners and the regulatory provision that allows subsequent claims.

Here, the ALJ denied Obush's 1989 claim, explicitly discrediting the diagnosis of pneumoconiosis by Dr. Turco. Because Dr. Turco's medical opinion was repudiated, we conclude as a matter of law that it is a misdiagnosis and cannot be a "medical determination" of pneumoconiosis, as set out in section 923. Therefore, the final denial of Obush's 1989 claim for black lung benefits reset the limitations clock as to subsequent claims.[8] Accordingly, we will hold that the Board correctly decided that Dr. Turco's medical opinion did not trigger the three-year statute of limitations in section 923 as to Obush's subsequent 2006 claim for benefits. Obush's instant claim is not time-barred.

### III.

Helen Mining argues in the alternative that ALJ Burke failed to adequately evaluate the evidence in Obush's 2006 claim, thereby errantly concluding that he had legal pneumoconiosis. "We review the decisions of the [Benefits Review] Board for errors of law and to assure that it has adhered to its own standard of review." *BethEnergy Mines, Inc. v. Director, Office of Workers' Compensation Programs*, 39 F.3d 458, 462-63 (3d Cir. 1994). We have plenary review

---

[8] *See Arch of Kentucky*, 556 F.3d at 483 ("[I]f a positive medical diagnosis, though found wanting by the adjudicator, was deemed to be sufficient to start the clock, the correctness of the adjudicator's denial would be called into question, at least implicitly.").

11

of the Board's legal determinations. *Id.* at 463. The Benefits Review Board is bound by an ALJ's factual findings "if they are rational, supported by substantial evidence, and consistent with applicable law." *Labelle Processing Co.*, 72 F.3d at 313. In instances where a party challenges a finding of fact by the Board or the ALJ, "we must independently review the record 'and decide whether the ALJ's findings are supported by substantial evidence.'" *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir. 1986) (quoting *Walker v. Universal Terminal & Stevedoring Corp.,* 645 F.2d 170, 172 (3d Cir. 1981)); *see also Soubik v. Director, Office of Workers' Compensation Programs*, 366 F.3d 226, 233 (3d Cir. 2004) ("Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). As a result, we begin by looking at the decision of the ALJ.

The record contains reports from five physicians submitted with respect to Obush's 2006 claim: Dr. Schaaf and Dr. Begley, who examined Obush at his request; Dr. Fino and Dr. Renn, who examined Obush at the request of Helen Mining; and Dr. Martin, whose examination of Obush was sponsored by the Department of Labor. ALJ Burke generally found that the x-rays did not establish the existence of pneumoconiosis, undermining diagnoses of clinical pneumoconiosis made by Dr. Schaaf and Dr. Begley.

Curiously, however, Helen Mining argues that the lack of x-ray evidence of clinical pneumoconiosis also undermines the opinions of those physicians who separately concluded that Obush's condition meets the definition of legal pneumoconiosis. Helen Mining fundamentally misreads both

12

the record and the words of the ALJ. ALJ Burke stated the following:

> The medical opinion evidence supports a finding of legal pneumoconiosis. All of the doctors of record have concluded that the Claimant suffers from emphysema, and the weight of the evidence shows that the emphysema arose from, was significantly related to, or substantially aggravated by his significant coal dust exposure.
>
> The findings of Drs. Schaaf and Begley are well documented and reasoned and accorded determinative weight on the issue of the cause of the emphysema. *Fields v. Island Creek Coal Co.,* 10 B.L.R. 1-19 (1987). Drs. Schaaf and Begley, both board certified in pulmonary medicine, have concluded that the miner's coal dust was significantly related to his development of emphysema. Both relied upon the miner's long-term occupational exposure to coal dust as well as the remoteness and moderation of the miner's prior smoking habit to justify their attribution of the

13

> miner's disabling obstructive
> impairment to his work as a coal
> miner. Though both found
> clinical pneumoconiosis, they
> both concluded that their
> diagnosis of COPD arising from
> coal dust exposure did not depend
> upon radiographic evidence of
> coal workers' pneumoconiosis.
> Their findings were echoed by Dr.
> Martin. Moreover, Dr. Fino could
> not rule out the Claimant's
> significant dust exposure as a
> cause of his respiratory disease.
>
> In contrast to Drs. Begley and
> Schaaf, Dr. Fino's opinion on the
> presence of pneumoconiosis is
> equivocal. *see* [sic] *e.g.*, *Griffith
> v. Director, OWCP*, 49 F.3d 184
> (6th Cir. 1995).

*J.O. v. Helen Mining*, 2007 BLA No. 5205, 11 (May 29, 2008) (footnote omitted).[9]

---

[9]http://www.oalj.dol.gov/Decisions/ALJ/BLA/2007/JO_v_HELEN_MINING_CO_DIR-_2007BLA05205_(MAY_29_2008)_095355_CADEC_SD_files/css/JO_v_HELEN_MINING_CO_DIR-_2007BLA05205_(MAY_29_2008)_095355_CADEC_SD.HTM

We read in this decision a clear statement that the award of black lung benefits is based solely on a finding of legal pneumoconiosis. We also regard the statements of Dr. Schaaf and Dr. Begley as unequivocally establishing that their medical opinions of legal pneumoconsiosis exist independent of their finding of clinical pneumoconiosis and their interpretation of the x-ray evidence. Nonetheless, citing to *Island Creek Coal Co. v. Compton*, 211 F.3d 203, 211-12 (4th Cir. 2000), Helen Mining insists that the discredited readings of the x-ray evidence entirely discredit not only their diagnoses of clinical pneumoconiosis, but also their conclusions that the record supports legal pneumoconiosis.

In *Island Creek*, however, the x-ray was the sole basis for the doctor's diagnosis of coal worker's pneumoconiosis. *Id.* Here, both physicians not only stated that their opinion of legal pneumoconiosis was not based upon x-rays, but they also provided data from physical examinations, pulmonary function tests, blood gas studies, as well as analyses of Obush's smoking habit, medical history, and employment history that supported the determination of legal pneumoconiosis. Helen Mining's argument cannot be reconciled with the record.

Helen Mining makes the same mistake when it asserts that the ALJ neglected his obligation to state the reasons for his decision, creating instead a "silent presumption" that coal mine employment causes pulmonary disease. To the contrary, ALJ Burke explains in detail his rationale for crediting the doctors' findings of legal pneumoconiosis, noting the qualifications of the doctors and the data from the

15

examinations of Dr. Schaaf, Dr. Begley, and Dr. Martin.[10] The ALJ states that Dr. Schaaf, Dr. Begley, and Dr. Martin ruled out bronchitis and asthma due to the medically insignificant response Obush showed to bronchodilators and the lack of any other significant clinical indicia of these ailments. Dr. Schaaf explicitly stated that his conclusion was consistent with the standards of the American Thoracic Society. The ALJ summarized Dr. Schaaf's assessment of Obush's smoking history as follows:

> Dr. Schaaf noted that as between coal dust exposure and smoking, it is not possible to ascertain the cause of the miner's obstructive impairment from objective testing, but he discounted the influence of smoking, concluding that the smoking was too remote and of insufficient severity to be more than a small contributor to the miner's severe air flow obstruction. Dr. Schaaf concluded that the Claimant's pulmonary deterioration as evidenced by his declining FEV-1 and FEV-1/FVC results during 1989, 1990 and the present were

---

[10] We note also that Dr. Fino's opinion was equivocal on whether the record supported a finding of legal pneumoconiosis.

> consistent with a disease resulting
> from coal dust exposure . . . .

*J.O. v. Helen Mining*, 2007 BLA No. 5205, 8. The ALJ documented that Dr. Begley and Dr. Martin both regarded Obush's smoking history as significant. However, Dr. Martin cited a respected medical text in support of his conclusion that respiratory deterioration due to smoking ends once smoking ends. Both doctors assessed their clinical findings in light of Obush's history and concluded that his pulmonary impairment arose from work-related coal dust exposure based upon their clinical observations. Dr. Martin's opinion was also based upon his years of treating patients with this condition.

From all of this, we conclude that the ALJ did not create any "silent presumption," but rather detailed a collection of evidence—physical exams, pulmonary function and blood gas tests, and analyses of other possible causes that included Obush's smoking history—to support his conclusion that Obush had a chronic lung disease arising out of his exposure to coal dust from his coal mine employment. As such, we conclude that the ALJ did consider the relevant medical evidence and that the ALJ's finding of legal pneumoconiosis was supported by substantial evidence.[11] *See* 20 C.F.R. § 718.202(a)(4).

---

[11] Helen Mining also argues that the ALJ failed to resolve conflicts between the opinions of Drs. Schaaf, Begley, and Martin, and the opinion of Dr. Renn. However, as we conclude below that the ALJ did not err in his review of Dr. Renn's opinion, we do not find any merit in this argument.

Helen Mining next complains that ALJ Burke errantly discredited the medical opinion of Dr. Renn, proffered by Helen Mining, concluding that the record did not support evidence of legal pneumoconiosis. When asked in deposition why Obush does not suffer from legal pneumoconiosis, the ALJ quoted testimony of Dr. Renn:

> "Well, this would have to be a direct result of coal mine dust exposure having either caused or contributed to an existing respiratory condition and there is no causation or contribution from coal mine dust exposure because, number one, he doesn't have radiological evidence of coal workers' pneumoconiosis. Therefore, he could not have the focal emphysema. Without the focal emphysema, it could not be contributing to the emphysema caused by his tobacco smoking and, as I've already said, the asthma that he has is a disease of the general population."

*J.O. v. Helen Mining*, 2007 BLA No. 5205, 11-12. The ALJ gave less weight to Dr. Renn's opinion because he found that Dr. Renn's statement was inconsistent with 20 C.F.R. § 718.202(1)(4) and with the preamble to the regulations. Helen Mining argues both that the ALJ misconstrued Dr. Renn's statement and that the preamble to the regulations

18

lacks the force of law and cannot provide a legal basis to give an opinion less weight.

After reviewing the entire record relating to Dr. Renn's opinion, we conclude that the ALJ fairly read Dr. Renn's words as stating that a finding of radiographic pneumoconiosis is a prerequisite to a determination of legal pneumoconiosis. Moreover, the ALJ reasonably concluded that this position is at odds with 20 C.F.R. § 718.202(a)(4) ("A determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative X-ray, finds that the miner suffers or suffered from pneumoconiosis as defined in § 718.201."). Helen Mining never addresses this patent conflict. Moreover, Helen Mining's argument regarding the legal gravamen of the preamble misses the point. The ALJ's reference to the preamble to the regulations, 65 Fed. Reg. 79941 (Dec. 20, 2000), unquestionably supports the reasonableness of his decision to assign less weight to Dr. Renn's opinion. *See Midland Coal Co. v. Director, Office of Workers' Compensation Programs,* 358 F.3d 486, 490 (7th Cir. 2004). For these reasons, we reject Helen Mining's assertion that the ALJ's consideration of Dr. Renn's opinion was unjust.

Helen Mining finally asserts that ALJ Burke erred by reconsidering facts that were already determined by ALJ Tierney in Obush's 1989 claim. Helen Mining characterizes ALJ Burke's finding that Obush smoked 25 pack years to be error because it is at odds with prior factual findings that did not change (since all agree that Obush stopped smoking before the 1989 claim). We note, however, that ALJ Tierney did not make a "pack year" finding. Rather, ALJ Tierney

19

merely gave a range for Obush's smoking as averaging from 1 to 1 ½ packs per day between 1944 and 1970. Similarly, ALJ Burke estimated that Obush smoked for "approximately 25 years," noting that he smoked 1 pack per day "occasionally more and occasionally less." *J.O. v. Helen Mining*, 2007 BLA No. 5205, 2. We do not find any appreciable conflict in these estimations.

ALJ Burke did state that Obush quit smoking in 1968, while ALJ Tierney stated that he quit in 1970. It was error for ALJ Burke to admit a different date into the record, but we regard it—and any potential impact that it may have had on ALJ Burke's finding of 25 pack years—as harmless. *See Freeman United Coal Min. Co. v. Cooper*, 965 F.2d 443, 449 (7th Cir. 1992). Both decisions estimate that Obush smoked approximately 1 pack per day for approximately 25 years and both decisions portray Obush as having quit smoking many years before he quit working in the coal mines. Accordingly, ALJ Burke's error—stating that Obush quit smoking in 1968 rather than 1970—is not a sufficient basis to vacate the decision of the Board.

Having determined that substantial evidence supports the decision of the ALJ, we also conclude that the Board adhered to its scope of review, and did not err by affirming the ALJ's award of black lung benefits to Obush.

IV.

For all of these reasons, we will deny the petition for review.

20