NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1311
_____

T.J.S. MINING, INC.; ROCKWOOD CASUALTY INS. CO.,
Petitioners

v.

RONALD M. PATRICK; DIRECTOR OWCP,
United States Department of Labor,
Respondents
_____

On Appeal from the Benefits Review Board
(BRB-1:10-0215 BLA)
Administrative Law Judge: Hon. Thomas M. Burke
_____

Submitted Under Third Circuit LAR 34.1(a)
April 25, 2013

Before: JORDAN, GREENBERG and NYGAARD, *Circuit Judges*.

(Filed: June 14, 2013)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

T.J.S. Mining, Inc., and Rockwood Casualty Insurance Company (collectively,

"Petitioners") seek review of an order by the Benefits Review Board (the "Board")

affirming an award of disability benefits to Ronald M. Patrick pursuant to the Black Lung

Benefits Act, 30 U.S.C. § 901 *et seq.* For the reasons that follow, we will deny the petition.

## I. Background

Patrick worked as a coal miner from February 1968 until May 2004, when he quit because of breathing problems. His last position was with T.J.S. Mining as a foreman responsible for examining the face of the coal mine, its beltline, and its return air course. His work required him to regularly travel almost a mile on his hands and knees through the mine. He put his lungs at further risk by heavy smoking, averaging a pack of cigarettes a day from the time he was 16 to when he was 60. (He is now 68 years old). Patrick sought lifetime benefits under the Black Lung Benefits Act (the "Act") because he believes he suffers from a respiratory condition known as pneumoconiosis, which can be caused by exposure to coal dust. He filed his claim pursuant to the Act on September 19, 2006.

To recover under the Act, Patrick was required to establish, by a preponderance of the evidence, that (1) he has pneumoconiosis; (2) it arose from his coal mine employment; and (3) it caused him "total disability." 20 C.F.R. §§ 718.201-204. At the administrative hearing, the parties stipulated that Patrick had worked in the coal mine for 35.26 years. Petitioners also agreed that Patrick was totally disabled due to a respiratory condition. The issues and evidence presented to the ALJ focused on whether Patrick's total disability was caused by his coal mine employment or by his history of smoking.[1]

---

[1] It is undisputed that Patrick does not have medically diagnosed pneumoconiosis. Instead, he seeks recovery for "legal pneumoconiosis." Whether or not one has been

In that regard, an Administrative Law Judge ("ALJ") reviewed copious medical evidence, including, for example, ten x-ray results (some positive for pneumoconiosis, some negative), arterial blood gas tests, FEV-1 tests,[2] and other pulmonary function tests.

In addition, and particularly relevant to this appeal, the ALJ reviewed the medical reports and testimony of Drs. John Schaaf, Christopher Begley, Gregory Fino, and Peter Kaplan, who each opined about the presence of pneumoconiosis after examining Patrick, performing tests, and reviewing chest x-rays.[3] Drs. Schaaf and Begley both concluded that Patrick suffered from pneumoconiosis, as broadly defined by regulation, and that his respiratory condition was caused by his exposure to coal dust, which in turn is a substantial cause of his total disability. Drs. Fino and Kaplan, on the other hand,

---

diagnosed with having the specific disease bearing the name "pneumoconiosis," recovery is still available under the rubric of "legal pneumoconiosis," which, by regulatory definition, is expansive enough to permit recovery under the Act for a variety of breathing impairments arising from coal mine employment. 20 C.F.R. § 718.201(a)(2); *see Hill v. Dir., OWCP*, 562 F.3d 264, 270 (3d Cir. 2009) (noting the definition of legal pneumoconiosis is much broader than the medical definition). The parties do not dispute that Patrick suffers from a disabling breathing impairment; therefore, the entire dispute centers around whether that impairment arose from his coal mine employment or his smoking.

[2] FEV-1 (standing for forced expiratory volume) is "[t]he most useful measurement" when assessing coal workers' pneumoconiosis; it corresponds to "the volume of air exhaled during the first second of a forced exhalation after a maximal inspiration." 15 Jacqueline Moline & Stephanie Golden, *Coal Workers' Pneumoconiosis*, *in Attorneys' Textbook of Medicine* ¶ 205B.64(1) (3d ed. 1994).

[3] The ALJ also briefly discussed the opinion of Dr. Imran Bajwa, who concluded that Patrick's breathing problems were caused by both smoking and coal dust. But Dr. Bajwa did not opine on whether the coal dust was a significant factor in Patrick's breathing problems, and the ALJ then stated that that opinion did not establish pneumoconiosis. Petitioners do not raise any concerns about Dr. Bajwa's opinion or the ALJ's discussion of that opinion in their petition for review.

3

concluded that Patrick did not suffer from pneumoconiosis, and that his total disability was caused by smoking.

The ALJ credited the opinions of Drs. Schaaf and Begley as "reasoned and documented" and stated that those opinions "thoroughly and persuasively" explained why Patrick suffered from pneumoconiosis, as that term is defined by the pertinent regulations. (App. at 20.) The ALJ rejected the opinions of Drs. Fino and Kaplan, however, because, in his view, both doctors impermissibly based their opinions on generalized studies of exposure to coal dust and seemed to require, contrary to federal regulations, a positive x-ray for a finding of legal pneumoconiosis. The ALJ then granted Patrick benefits pursuant to the Act.

Petitioners appealed that decision to the Board, claiming that the ALJ improperly rejected the medical opinions of Drs. Fino and Kaplan. The Board affirmed the ALJ's award of benefits. It agreed with the ALJ's rejection of those opinions as being based upon evidence and inferences contrary to what is permitted under the Act and federal regulations.

Petitioners timely sought review of that decision.

## II.    Discussion[4]

The Black Lung Benefits Act defines "pneumoconiosis" as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b). As already noted, a claimant seeking benefits must establish, by a preponderance of the evidence, that (1) he has pneumoconiosis; (2) it arose from his coal mine employment; and (3) it caused him total disability. 20 C.F.R. §§ 718.201-204. Pneumoconiosis is taken to be the actionable cause of total disability if it is a "substantially contributing cause" of the disability. *Id.* §718.204(c). A "substantially contributing cause" of the disability occurs when the disease either (1) has "a material adverse effect on the miner's respiratory or pulmonary condition" or (2) "[m]aterially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment." *Id.*

---

[4] The ALJ and the Board had jurisdiction pursuant to 30 U.S.C. § 932(a) and 33 U.S.C. § 921(b). We have jurisdiction under 30 U.S.C. § 932(a) and 33 U.S.C. § 921(c). We review Board decisions for errors of law, and for whether the Board adhered to its own standard of review. *Lombardy v. Dir., OWCP*, 355 F.3d 211, 213 (3d Cir. 2004). We review questions of law *de novo*. *Id.* The Board is bound, as are we, by the ALJ's findings of fact, if those findings are supported by substantial evidence. *Id.* In cases where a party challenges a finding of fact by the Board or the ALJ, we independently review the record and decide whether that finding is supported by substantial evidence. *Helen Min. Co. v. Dir., OWCP*, 650 F.3d 248, 254 (3d Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidation Coal Co. v. Kramer*, 305 F.3d 203, 207 (3d Cir. 2002). Under that standard, we will not upset an ALJ's factual findings if supported by substantial evidence, even if we "might have interpreted the evidence differently in the first instance." *Balsavage v. Dir., OWCP*, 295 F.3d 390, 395 (3d Cir. 2002) (internal quotation marks omitted).

Again as previously noted (*see supra* note 1), a diagnosis of pneumoconiosis for purposes of recovering benefits can be either a "clinical" diagnosis or a "legal" one. "Clinical pneumoconiosis consists of those diseases recognized by the medical community as pneumoconioses … ." *Id.* § 718.201(a)(1) (internal quotation marks omitted). "Legal pneumoconiosis includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment. This definition includes, but is not limited to, any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment." *Id.* § 718.201(a)(2) (internal quotation marks omitted). For example, chronic bronchitis, as well as emphysema and certain types of asthma, are all possible species of legal pneumoconiosis. *See* Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, 65 Fed. Reg. 79,920, 79,939 (Dec. 20, 2000) ("The considerable body of literature documenting coal mine dust exposure's causal effect on the development of chronic bronchitis, emphysema and associated airways obstruction constitutes a clear and substantial basis for [the definition of legal pneumoconiosis].").  A diagnosis of "pneumoconiosis," in a legal sense, can be established by way of x-ray evidence, biopsy or autopsy results, legal presumptions under 20 C.F.R. §§ 718.304-306, or reasoned medical opinions. 20 C.F.R. § 718.202(a). All such evidence is to be weighed together to determine the existence of pneumoconiosis. *Penn Allegheny Coal Co. v. Williams*, 114 F.3d 22, 25 (3d Cir. 1997).

It is undisputed that, as the ALJ concluded, Patrick's x-ray evidence did not establish that he suffered from clinical pneumoconiosis. Nor did Patrick submit biopsy results or argue that he was entitled to any of the presumptions from 20 C.F.R. §§

6

718.304-306. His diagnosis was dependent solely upon the medical opinions of the four doctors, as described above. Petitioners do not deny that Drs. Schaaf and Begley concluded that Patrick suffered from legal pneumoconiosis substantially contributing to his pulmonary disability. They only challenge the reasons for the ALJ's rejection of the contrary opinions of Drs. Fino and Kaplan. We turn, then, to a consideration of whether the ALJ erred in rejecting those opinions.

The ALJ refused to credit Dr. Fino's opinion for several reasons. Dr. Fino concluded that Patrick's pulmonary function tests worsened over a short period of time (about one year, from 2007 to 2008) and that that was indicative of smoking, not coal dust exposure. The ALJ concluded, however, that the record did not support that assertion because Patrick testified his breathing had continually worsened since he left the coal mine in 2004, and the record also indicated that, taking into account the several physicians that examined Patrick, his objective breathing tests exhibited little variability.

Moreover, the ALJ concluded that Dr. Fino impermissibly based his opinion about Patrick's loss of FEV-1 on the average loss shown in a statistical study of coal miners. Lastly, the ALJ rejected Dr. Fino's opinion because he ruled out coal dust as a cause of Patrick's total pulmonary disability because of Patrick's negative x-ray. Specifically, the ALJ explained that Dr. Fino testified that studies show that a person with a negative x-ray has no more than ten percent increased emphysema. The ALJ interpreted that testimony to mean that Dr. Fino would not conclude that Patrick had emphysema sufficient for recovery under the Act without a positive x-ray. Therefore, according to the ALJ, Dr.

7

Fino's opinion was inconsistent with 20 C.F.R. § 718.202(a)(4),[5] which, in the ALJ's words, "explicitly allows for a finding of a totally disabling obstructive pulmonary disease caused by coal dust exposure, notwithstanding a negative x-ray." (App. at 21.)

The ALJ rejected Dr. Kaplan's opinion for similar reasons. Specifically, the ALJ concluded that Dr. Kaplan, contrary to § 718.202(a)(4), would not diagnose emphysema from coal dust exposure without a positive x-ray. The ALJ also rejected Dr. Kaplan's opinion because he too relied upon generalized studies of coal miners when assessing Patrick's condition. In sum, the ALJ concluded, "[t]he reasoning of Dr. Fino and Dr. Kaplan for finding the obstructive lung disease to be caused by cigarette smoking without a significant contribution by coal dust exposure is not accepted because … it is contrary to the Act and regulations." (App. at 21.)

Petitioners argue with respect to Dr. Fino that, contrary to the ALJ's findings, he based his conclusions on Patrick's actual pulmonary function test results, not just on a generalized study. In support, they cite one paragraph from Dr. Fino's deposition in which he discussed Patrick's drop off in FEV-1 results from July 2007 to May 2008 of about 33 percent. There, Dr. Fino opined that one does not generally see that amount of loss in individuals that have coal dust exposure, and he concluded that that loss was because of lung disease related to smoking, not coal dust exposure. Petitioners also argue that Dr. Fino did not impermissibly rely upon Patrick's negative x-ray in his diagnosis

---

[5] That regulation provides as follows: "A determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative X-ray, finds that the miner suffers or suffered from pneumoconiosis … ." 20 C.F.R. § 718.202(a)(4).

because he testified that even a positive x-ray might not, in every case, lead to a diagnosis of pneumoconiosis because, in general, a positive x-ray for lung obstruction corresponds to a clinically insignificant loss of FEV-1 when comparing miners to non-miners.

Those selections from the record are unavailing. Dr. Fino was asked specifically what role coal mine employment played in Patrick's development of pulmonary disability, and he responded by referring to an epidemiologic study that showed the average FEV-1 loss for coal miners. Although Patrick's FEV-1 reading was somewhat worse than average, Dr. Fino considered it as approximately average and said, "I don't believe that this man has any more than an average loss of FEV-1 due to coal mine dust." (App. at 114.) Apparently, Dr. Fino then concluded that the disabling lung condition that Patrick has must have been due to causes other than coal dust exposure. Under our deferential standard of review, we cannot say that the ALJ erred in dismissing Dr. Fino's opinion because it was based on the generalized epidemiologic study and did not adequately consider the specifics of Patrick's case. *See* 65 Fed. Reg. at 79,940-45 (rejecting as inconsistent with the focus of legal pneumoconiosis generalized FEV-1 studies and results performed by Dr. Fino and others).

The ALJ also did not err in rejecting Dr. Kaplan's opinion. Petitioners argue that Dr. Kaplan specifically explained after looking at all of the medical evidence that Patrick's breathing problems – which were in Dr. Kaplan's view a result of emphysema – were caused by smoking, not by coal dust exposure. But Dr. Kaplan indicated that he would require a diagnosis of clinical pneumoconiosis before allowing that Patrick's breathing problems could be called "pneumoconiosis" in any sense. As explained above,

9

clinical pneumoconiosis and legal pneumoconiosis are separate concepts, either of which is sufficient to enable a claimant to recover benefits. Dr. Kaplan appears to require a clinical diagnosis for what would be an otherwise sufficient legal basis for calling Patrick's condition pneumoconiosis. That conclusion is contrary to the regulatory framework under the Act. Accordingly, the ALJ could permissibly reject Dr. Kaplan's opinion. *See Helen Min. Co. v. Dir., OWCP*, 650 F.3d 248, 256-57 (3d Cir. 2011) (affirming an ALJ's rejection of medical testimony as contrary to the Act and regulations where it appeared to require a finding of a positive x-ray for a diagnosis of legal pneumoconiosis).

Because the ALJ was within the bounds of discretion in declining to credit Dr. Fino's and Dr. Kaplan's opinions, and because there was "such relevant evidence as a reasonable mind might accept as adequate to support … [the ALJ's] conclusion," *Consolidation Coal Co. v. Kramer*, 305 F.3d 203, 207 (3d Cir. 2002), the award of benefits to Patrick was justified and the Board did not err in affirming it.

## III. Conclusion

For the foregoing reasons, we will deny the petition for review.