NYGAARD, Circuit Judge,
Dissenting.
I.
I respectfully dissent. The-majority relies heavily on one aspect of the Obush opinion: the courts’ long history of giving a liberal interpretation to the Black Lung Benefits Act (30 U.S.C. §§ 901-945) to fulfill the remedial nature of the law. As the one who wrote the Obush opinion for the Court, I obviously have no problem with this general approach to interpreting the statute. However, I part ways with the majority because it fails to account for the entire holding in Obush, and, because of that, it misapplies it here.
Obush does not support the majority’s holding that a Pennsylvania Workers’ Compensation Administrative Law Judge (ALJ) is competent to rule that a diagnosis of black lung disease is a misdiagnosis *315 under the federal Black Lung Benefits Act. Helen Mining v. Director OWCP (Obush), 650 F.3d 248 (3d Cir.2011). Moreover, I can find no statutory or legal basis to give such authority to a Pennsylvania Workers’ Compensation ALJ.[1] To the contrary, although section 421 of the Black Lung Benefits Act (codified at 30 U.S.C. § 931) requires miners to file state workers’ compensation claims, the requirement applies only to miners in states where the Secretary of Labor has determined that it provides adequate coverage for disability or death due to pneumoconiosis. To date, the Secretary has determined that no state program meets such requirements. 20 C.F.R. Part 722. For these reasons, I must conclude that Charles Morris’ claim for black lung benefits, filed almost five years after he received a diagnosis of black lung disease, is time barred. Accordingly, I would grant 84 Mining’s Petition and instruct the Board of Review to reverse the decision of the federal Administrative Law Judge who granted benefits to Charles Morris.
II.
A federal ALJ’s decision on a miner’s claim for benefits under the federal Black Lung Benefits Act — if made pursuant to 20 ' C.F.R. § 725.421(a) and § 725.451-464 — is res judicata. 20 C.F.R. § 479(a); see also Labelle Processing Co. v. Swarrow, 72 F.3d 308 (3d Cir.1995).[2] Therefore, claimants are es-topped from re-litigating any factual findings or legal determinations made in the adjudication of the claim. Swarrow, 72 F.3d at 314. But, in cases where the ALJ discredits the underlying diagnosis and denies the claim for benefits under the Black Lung Benefits Act, this decision is tantamount to a ruling that the diagnosis supporting the claim is a misdiagnosis. Obush, 650 F.3d at 252. Such misdiagnoses are legally insufficient to trigger the statute of limitations for subsequent claims. Id. As a result, the limitations clock is reset and claimants are able to bring a subsequent claim, pursuant. to 20 C.F.R. § 725.309(c), without running afoul of the three-year statute of limitations that applies to “any” claim. Swarrow, 72 F.3d at 314.[3]
At issue here is whether the denial of a claim for benefits under Pennsylvania’s Workers’ Compensation program is res ju-dicata such that — except as provided in 20 C.F.R. § 725.309 — a claim filed under the Black Lung Benefits Act would be precluded. I frame the question in this manner because in Obush we said “because we are required to respect the factual findings and legal conclusions in earlier adjudicated claims, we must accept an ALJ’s conclusion that a medical opinion offered in sup *316 port of that claim is discredited.” Obush, 650 F.3d at 252. Our reasoning was necessarily rooted in our precedent analyzing Congress’ provisión for subsequent claims. Labelle Processing Co. v. Swarrow, 72 F.3d 308 (3d Cir.1995).
In Swarrow, the mining company argued that a miner’s subsequent claim was barred by the doctrine of res judicata because it was the same cause of action involving the same parties in which a final judgment had been made. Id. at 313. We determined that[1] Congress’ provision for a second claim did not violate res judicata because the second claim was not constituted merely of “more doctors” saying the same things and finding a “sympathetic ALJ.” Id. Instead, the second claim was premised on “a material change in conditions” from the first claim that asserted new facts giving rise to a new claim. Id. In Obush, we had no difficulty in determining that the subsequent claim was a material change in conditions because both the first and second claims were ruled upon by an ALJ of the U.S. Department of Labor, who ruled in both cases pursuant to 20 C.F.R. § 725.451-464. Moreover, there was no question that the ALJ’s decision to' discredit the first diagnosis and deny that claim was made in accord with the regulations governing the evaluation of claims for black lung benefits (20 C.F.R § 718, § 725) and with the precedent of the Board of Review. Because of this, we had certainty that the second claim brought by Obush was, indeed, a new claim, premised on a material change in conditions from the first diagnosis. Here, however, we have no such assurance.
We will presume, for purposes of this analysis, that the 2008 Pennsylvania ALJ’s decision at issue here was consistent with the regulations and precedents controlling the Pennsylvania Workers’ Compensation program, but the record is devoid of any evidence to assess whether relevant Pennsylvania regulations and precedent are in any way compatible with those governing claims for benefits under the Black Lung Act. Although the ALJ admitted the state decision into the record, there is no evidence that the ALJ engaged in any analysis of relevant Pennsylvania law or the decision itself. Therefore, we cannot say with any certainty that the claim before us is, indeed, a new claim based on new facts. The majority never addresses this lacuna in the record. It simply declares, by fiat, that the decision by the Pennsylvania Workers’ Compensation ALJ is the same as a federal black lung ALJ’s decision, rendering the underlying diagnosis a misdiagnosis. This assumption is particularly troubling in light of the Secretary of Labor’s own recent assessment that no state workers’ compensation program — Pennsylvania included — is comparable to the federal black lung program. 20 C.F.R. Part 722. However, even if such evidence were in the record, the majority would still have a fundamental problem that simply cannot be brushed aside by pointing to the remedial nature of the statute: I see no way that, the state adjudication could be res judicata as to the claim for federal Black Lung Act benefits.
The Pennsylvania ALJ decision is not a final decision on the merits of “the same cause of action, involving the same parties or their privies” as to any claim for benefits under the Black Lung Act. Swarrow, 72 F.3d at 313. This is by design. Because these, are distinct claims, a miner— based on the same black lung diagnosis — is able to file, both, a claim for Pennsylvania Workers’ Compensation benefits and a claim for federal black lung benefits: proceeding with both even if one of them is *317 ultimately denied.[4] Although a denial of a Pennsylvania Workers’ Compensation claim might be relevant to a federal black lung claim that is based on the same diagnosis, the disposition of the Pennsylvania-claim does not prevent or resolve the federal claim. See Schegan v. Waste Mgmt & Processors, Inc., 18 BLR 1-41 (1994); Clark v. Karst-Robbins Coal Co., 12 BLR 1-149 (1989)(en banc).[5]
Precisely because the denial of a claim for Pennsylvania benefits that is based on a black lung diagnosis does not prevent or resolve a contemporaneous claim for federal black lung benefits based on the same diagnosis, there is no way that the Pennsylvania ALJ’s determination can serve as a conclusive ruling as to any other federal black lung -claim that may be filed later. This is the logical consequence of our ruling in Swarrow and Obush. Therefore, I disagree with the majority. The decision of the Pennsylvania Workers’ Compensation ALJ to deny Morris’ claim for workers’ compensation benefits is not tantamount to a ruling that the underlying diagnosis of black lung disease is a misdiagnosis.
The implications of my conclusion are clear and direct. “Any claim for benefits by a miner under this section shall be filed within three years after ... a medical determination of total disability due to pneumoconiosis.” 30 U.S.C.A. § 932; see also 20 C.F.R. § 725.308. Therefore, any diagnosis of black lung that is “communicated to a miner or a person responsible for the care of the miner” (20 C.F.R. 725,308) triggers the statute of limitation for a claim of benefits to be filed under the Black Lung Benefits Act. Peabody Coal Co. (Brigance), 718 F.3d at 594 (“Construing the text of the statute as written, we hold that when a diagnosis of total disability due to pneumoconiosis by a physician trained in internal and pulmonary medicine is communicated to the miner, a “medical determination” sufficient to trigger the funning of the limitations period has been made. No more is required.”). The statute makes no provision for a miner to file a distinct claim after the expiration of that statute of limitation unless the merits of a timely filed claim for benefits under the Black Lung Benefits Act have been conclusively, affirmatively ruled upon. See 20 C.F.R. § 725.309. The statute of limitation clock is reset only after such a federal claim has been denied, rendering the underlying diagnosis a misdiagnosis. Obush, 650 F.3d at 253.[6] Since the state ALJ’s decision does not have any conclusive effect upon subsequent federal claims, and it is not tantamount to a ruling (for purposes of a federal claim) that the underlying diagnosis is a misdiagnosis, the state ALJ’s decision does not reset the statute of limitations clock under the federal Black Lung Benefits Act for purposes of a subsequent federal black lung claim.
In this case, a diagnosis of black lung disease was communicated to Charles Morris in 2006. Because he did not file any federal claim under the Black Lung Benefits Claims Act within the following *318 three-year window, he is now time barred from raising any other claim.
As I stated above, I have no issue with the general orientation of the courts to interpret the statute liberally in order to give effect to the statute’s remedial nature. However, we have an obligation to make such interpretations in a manner that respects the structure provided by Congress and the United States Department of Labor. In Obush, our liberal interpretation of the statute served not only to extend remediation to Obush, but also to preserve the claim structure established by Congress and the Secretary of Labor. We noted that a strict interpretation of the statute of limitations of the Black Lung Benefits Act would have eviscerated the statute’s provision for subsequent claims, since any claim would have to have been filed within three years of the initial diagnosis. Id.
In this case, the majority’s interpretation of Obush would actually impair the claim structure established by statute and regulation, and potentially render meaningless years of precedent established by the Review Board on the determination of disability under the Act. This is so because, if the majority’s interpretation is taken to its logical conclusion, a Pennsylvania Workers’ Compensation ALJ decision to award benefits would also have conclusive effect, mandating an award of black lung benefits regardless of the federal requirements set out at law. The majority’s over-reliance on the remedial nature of the statute in this case produces a result that is not only unsupported by the statute, by our precedent, or by the record of this case; it is a holding that could potentially unravel the statutory and regulatory scheme for black lung claims. Therefore, as I stated above, I must disagree with the majority and conclude that a decision of a state workers’ compensation ALJ cannot be sufficient to reset the statute of limitation for a federal black lung claim.
It is clear that the Benefits Review Board also had some issue with the ALJ’s reasoning, because it chose to uphold the award of benefits on alternative grounds. (App. at All). It did not state its reasons for doing so, but it is fair to assume that the Board was aware of the conflict the ALJ’s interpretation of Obush created with its own precedent in Schegan and Clark v. Karst-Robbins Coal Co., which explicitly provides that state findings are not binding upon these federal proceedings. Beyond that, however, I will not speculate on why the Board took a different path to affirm the award of benefits. Nonetheless, consistent with the conclusion of the majority,[7] I, too, disagree with the Board’s alternative reasoning that grounded its denial of 84 Mining’s appeal on the basis of judicial estoppel.
III.
The Board ruled that 84 Mining was estopped from relying upon the 2006 black lung diagnosis to argue that Morris was time barred here. The rationale for their decision was that, in the Pennsylvania claim, 84 Mining argued the 2006 diagnosis of totally disabling pneumoconiosis was wrong, and that it is now inconsistent for it to assert “that this same report ... which employer previously claimed, and established, was incorrect, supports a claim for work-related injury and should have been acted upon my claimant.” (App. at All). 84 Mining makes no such assertion. Judicial estoppel “generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another *319 phase.” MD Mall Associates, LLC v. CSX Transp., Inc., 715 F.3d 479, 487 (3d Cir.2013), as amended (May 30, 2013) (quoting New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). 84 Mining claimed in the Pennsylvania case what it claims now: that the 2006 diagnosis is incorrect. 84 Mining is not making an argument that contradicts an earlier position. Rather, it argues precisely the same point that I raise above: a Pennsylvania Workers’ Compensation ALJ is not competent to rule, for purposes of the Black Lung Benefits Act, that the 2006 diagnosis is a misdiagnosis. Such a determination is only within the competence of those authorized by the Black Lung Benefits Act. It was up to Morris to obtain such a ruling and he did not do so. There is no inconsistency here.
Finally, I disagree with the Review Board that a miscarriage of justice was avoided by the grant of benefits here. (App. at All). After Morris received the denial of his Pennsylvania Workers’ Compensation claim in 2008, he still had roughly one year left before the federal statute of limitation expired on his black lung claim. I sympathize with the sentiment, alleged by Morris in his briefs, that — essentially — it would have been a waste of time to pursue a second claim based on a diagnosis that already had been discredited by a Pennsylvania adjudication. However, it is undeniable that the federal statute and regulations gave Morris a second opportunity for relief after Pennsylvania denied his claim. It is certainly unfortunate, but hardly a miscarriage of justice, that Morris chose to sit on his rights and refrain from filing a claim for federal black lung benefits.
IV.
For all of these reasons, I respectfully dissent from the majority. I would conclude that Morris’ claim is time barred. Accordingly, I would have granted the Petition for Review and instructed the Review Board to reverse the grant of benefits ordered by the Administrative Law Judge.

. The majority’s reference to an opinion from the Court of Appeals for the Sixth Circuit is misplaced. Peabody Coal Co. v. Director, Office of Wokers’ Compensation Programs, U.S. Dept. of Labor, (Brigance) 718 F.3d 590 (6th Cir.2013). The court in Peabody granted the petition for review of the mining company, reversing the grant of benefits, because the miner sat on his federal rights while adjudicating his state claim. Id. at 595. Nothing in -the court’s holding can be construed as concluding that the state adjudication of a claim is dispositive for purposes of a federal claim. To the contrary, as I discuss infra, the court made clear that the communication of a diagnosis alone is sufficient to trigger the statute of limitations. Id. at 594.

. Of course, such a decision is subject to appeal to the Benefits Review Board (20 C.F.R. § 481), and following that, a judicial review by a federal Court of Appeals (20 C.F.R. § 482(a)).

. Subsequent claims are regarded as such only if they are based on new evidence showing a material change in conditions. Id.; 30 U.S.C.A. § 932; see also 20 C.F.R. § 725.309(c).

. The statute anticipates the circumstance of a miner receiving both workers’ compensation benefits and black lung benefits, providing for an offset. 30 U.S.C. § 932(g).

. It is not a “trap” for unsophisticated miners to hold that claiming eligibility for benefits under a Pennsylvania Workers’ Compensation program is fundamentally different, by definition, from claiming eligibility for benefits under the Black Lung Benefits Act. Indeed, this is precisely what the Board of Review's own precedent declares, a conclusion that is reaffirmed by the Secretary of Labor’s continuous conclusion that the benefits are not synonymous.

.See supra discussion of section 421 of the Black Lung Benefits Act.

. See supra, majority opinion footnote 4.