

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-12-1995

# Keating v. Dir., Office of Workers' Comp. Programs

Precedential or Non-Precedential:

Docket 94-3593

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Keating v. Dir., Office of Workers' Comp. Programs" (1995). *1995 Decisions.* Paper 304.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/304

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-3593


MARTHA KEATING, Widow of John Keating,
Petitioner

V.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,
Respondent


PETITION FOR REVIEW OF AN ORDER OF THE BENEFITS REVIEW BOARD
BRB Docket No. 92-1245


Argued July 27, 1995

Before:  NYGAARD and McKEE, Circuit Judges and
FULLAM, District Judge*

(Opinion Filed December 12, 1995)


MAUREEN H. KRUEGER, ESQUIRE (Argued)
Suite 211
1653 The Fairway
Jenkintown, PA 19046
Attorney for Petitioner

PATRICIA M. NECE, ESQUIRE
EDWARD WALDMAN, ESQUIRE (Argued)
United States Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W.
Suite N-2605
Washington, DC 20210
Attorneys for Respondent


1

OPINION OF THE COURT

NYGAARD, Circuit Judge

The claimant, Martha Keating, appeals from a Benefits Review Board decision affirming an Administrative Law Judge's order rejecting her petition for modification. Her claim for Black Lung benefits as the surviving spouse of John Keating has a shamefully long history. It has been before three different ALJs and before the Board on three separate occasions. Although given several chances to consider properly Mrs. Keating's claim for survivor benefits, the ALJs and the Board repeatedly failed to do so. Instead, they dismissed her persistence as merely shopping for a "friendly factfinder." It is not apparent from the record whether she was shopping for a friendly factfinder or just a fair one. It is painfully obvious, however, that she found neither. Today, we will end this travesty. Based on the uncontradicted evidence conceded by the Director to be credible,[0] we conclude that the record establishes that Mrs. Keating is entitled to survivor benefits. We will grant the petition for review,

---

[0] The Director's Brief provides that:

> We have no quarrel with Keating as to the credibility of the lay evidence. We accept the facts asserted as true.

2

reverse the decision of the Board, and remand the cause for the limited purpose of awarding Mrs. Keating benefits from August of 1978.[0]

## I.

Nearly seventeen years ago, in February 1979, Mrs. Keating filed for survivor benefits under the Federal Black Lung Benefits Act, 30 U.S.C. §§ 901-945, as the surviving widow of miner John Keating, who died on July 19, 1978.

> Benefits are provided under the Act for or on behalf of miners who are totally disabled due to pneumoconiosis, or who were totally disabled due to pneumoconiosis at the time of death . . . .

20 C.F.R. § 718.204(a). The Department of Labor denied the claim and she requested a formal hearing before an ALJ. ALJ Marcellino (ALJ 1) held a hearing in December 1980, at which Mrs. Keating offered lay witness testimony and her husband's death certificate, but no medical evidence.[0] ALJ 1 denied benefits in April 1981.

ALJ 1 found that John Keating worked as a miner for various periods from 1939 through 1953. He worked part-time after school and on weekends in the "dog hole" mines from 1939 to 1942, for

---

[0]Mrs. Keating requests benefits beginning with the month after the miner's death, August 1978. Section 725.503(c), 20 C.F.R., provides:

> Except as is provided in Part 727 of this subchapter, in the case of a survivor of a miner who died due to or while totally disabled by pneumoconiosis, benefits shall be payable beginning with the month of the miner's death, or January 1, 1974, whichever is later.

[0] Lack of available medical evidence was explained, in part, because a coroner, who was not a medical doctor, signed the death certificate and because the two doctors who periodically treated John Keating were both dead and their records not obtainable.

3

which ALJ 1 credited the deceased with one year of employment. The Director conceded seven years of coal mine employment from 1946 to 1953. Hence, ALJ 1 credited the deceased with a total of eight years as a miner and found that Mrs. Keating was not entitled to any presumptions under the Act, because the deceased had fewer than ten years of coal mine employment.

According to ALJ 1, "the death certificate conclusively establishe[d] that the cause of death was acute cardiac and respiratory failure, with anthracosilicosis contributing to death." He stated that lack of evidence to show pneumoconiosis was either: 1) a multiple cause of death not medically distinguishable from the cause of death, or 2) related to or an aggravating cause of death, prevented a finding that Keating died from pneumoconiosis. Therefore, Mrs. Keating would have to prove that, at the time of his death, Keating suffered total disability as a result of pneumoconiosis from coal mine employment.

ALJ 1 then mistakenly decided that because Mrs. Keating was not entitled to any presumptions she could not prove pneumoconiosis solely by lay testimony, stating

> [w]hile the lay testimony of a widow and persons with knowledge of the miner's condition could in some cases establish a presumption of pneumoconiosis, where the miner has less than ten years of coal mine employment this evidence is simply insufficient to establish the existence of pneumoconiosis.

(Emphasis added). Incongruously, the ALJ found the death certificate alone competent to conclusively establish the cause of death, acute cardiac and respiratory failure with anthracosilicosis with emphysema contributing to death, but not

4

competent to establish pneumoconiosis. ALJ 1 denied Mrs. Keating's claim without considering the properly submitted lay evidence.

Mrs. Keating appealed the Decision and Order of ALJ 1 to the Board. Mrs. Keating argued that ALJ 1 erred by finding fewer than ten years of coal mine employment and by not giving proper weight to the lay testimony and death certificate. Almost three years later, the Board affirmed the denial of benefits, affirmed the finding of fewer than ten years of coal mine employment, and stated that it could not say the ALJ unreasonably determined that the lay evidence of record alone was insufficient to establish either death or total disability from pneumoconiosis. ALJ 1, however, did not determine that the lay evidence failed to establish Mrs. Keating's claim. Instead, he simply decided that lay evidence alone was insufficient if the miner had fewer than ten years of coal mine employment.

In August 1985, Mrs. Keating filed a second claim for benefits, which the Department of Labor treated as a request for modification under 20 C.F.R. § 725.310, and denied. In her request for modification, Mrs. Keating offered a newly discovered Anthracite Miners Certificate as evidence that ALJ 1 incorrectly credited her husband with fewer than ten years employment. Mrs. Keating also argued that ALJ 1 mistakenly decided the ultimate fact, her entitlement to benefits.

ALJ Tierney (ALJ 2) held a hearing two years later on whether ALJ 1's decision should be modified. He denied the modification request. In summary fashion, ALJ 2 stated that

5

modification would be granted only if Mrs. Keating proved a mistake of fact, and added that failure to present all available relevant evidence at the initial hearing does not constitute a mistake of fact. ALJ 2 made a conclusory statement that the "new evidence," the miner's certificate, was available at the time of the initial hearing and because Mrs. Keating testified at that hearing she had no basis to request modification. He flatly refused to consider the significance of the miner's certificate and Mrs. Keating's contention that ALJ 1's finding that she was not entitled to benefits constituted a mistake of fact.

A year later the Board affirmed ALJ 2 on appeal, basically reiterating the ALJ's decision. The Board acknowledged that ALJ 2 may have erred by failing to consider the effect of the miner's certificate, but added that the new evidence, even if considered, would not support a finding of ten years of coal mine employment. It noted, however, that if fully credited, the miner's certificate would support a finding of 9 years and 8 months of coal mine employment. Although Mrs. Keating clearly presented the issue, the Board did not consider whether ALJ 1 mistakenly decided the ultimate fact. The Board operated under the erroneous assumption that, even though her case was filed before 1982, without medical evidence she must show employment for at least ten years.

On June 13, 1990, Mrs. Keating once again sought proper consideration of her claim by filing a modification petition. ALJ Brown (ALJ 3) denied it one and a half years later, in February 1992. ALJ 3 did not consider carefully Mrs. Keating's petition

6

and ignored the fact that no judge had weighed the lay testimony on the deceased miner's condition.  Instead, ALJ 3 chastised the widow, stating the modification process "does not permit continuous reweighing of testimony by Judge after Judge until a friendly factfinder is found."

Mrs. Keating again appealed to the Board.  The Director this time agreed with Mrs. Keating that the administrative law judges had not properly considered her claim or modification requests, and filed a motion with the Board requesting remand to ALJ 3 for proper consideration.[º]  In August 1994, the Board denied the Director's motion and affirmed ALJ 3's decision.

The Board concluded that ALJ 3 found no mistake of fact and denied benefits.  It also opined that Mrs. Keating failed to argue mistake of fact.  This, however, is incorrect.  ALJ 3 refused both to consider the evidence and to decide if there had been a mistake of fact.  In affirming, the Board stated that Mrs. Keating's arguments (first, that the evidence of record established her entitlement to benefits and second, that the ALJ made a mistake of fact) amount instead to assignments of legal error or mistake in law and are not proper grounds for modification.  Mrs. Keating now petitions for review.

---

[º]The Director's Brief provides:

> [W]e are not unmindful of the long tortured procedural history of this case, which has already dragged on for far too long.  We also accept our share of the responsibility for the delay, as we did not recognize that Keating had yet to receive a proper evaluation of her evidence until this case was before the Board for the third time.

II.

First, we must determine whether the Board erred by upholding ALJ 3's refusal to consider whether Mrs. Keating had established a mistake of fact. It is important to note the purpose behind the Act in order to fully appreciate both the injustice to Mrs. Keating, and how the treatment of her case runs counter to congressional goals. Section 901(a), 30 U.S.C., provides:

> It is . . . the purpose of this subchapter . . . to ensure that in the future adequate benefits are provided to coal miners and their dependents in the event of their death or total disability due to pneumoconiosis.

The courts have repeatedly recognized that the remedial nature of the statute requires a liberal construction of the Black Lung entitlement program to ensure widespread benefits to miners and their dependents. Kline v. Director, OWCP, 877 F.2d 1175, 1180 (3d Cir. 1989).

Under 20 C.F.R. § 718.202,[0] in claims such as Mrs. Keating's filed before January 1, 1982, the claimant can rely solely on lay testimony. As we stated in Hillibush v. United States Dept. of

---

[0] Section 718.202(c), 20 C.F.R., regulates a finding of pneumoconiosis and provides:

> A determination of the existence of pneumoconiosis shall not be made . . . [in] a claim involving a deceased miner filed on or after January 1, 1982, solely based upon the affidavit(s) (or equivalent sworn testimony) of the claimant and/or his or her dependents who would be eligible for augmentation of the claimant's benefits if the claim were approved.

See also, 20 C.F.R. §§ 718.204(c)(5) & 718.305(b).

8

Labor, Benefits Review Bd., 853 F.2d 197, 204 (3d Cir. 1988),

citing 30 U.S.C. § 923(b),

> Where there is no medical or other relevant evidence in the case of a deceased miner, such affidavits . . . shall be considered to be sufficient to establish that the miner was totally disabled due to pneumoconiosis or that his or her death was due to pneumoconiosis.

The provisions regulating the use of lay evidence in pre-1982 cases address the difficulty of establishing an otherwise valid claim because of the lack of medical evidence, resulting from lost, destroyed, or incomplete doctor and hospital records or other medical evidence. See Hillibush, 853 F.2d at 204. Mrs. Keating faced this precise difficulty, and three ALJ's and the Board on three occasions used it against her to deny her claim.

It is true that based on ALJ 1's finding of fewer than ten years of coal mine employment, Mrs. Keating is not entitled to the interim presumption of 20 C.F.R. § 727.203(a).[0] Nonetheless, ALJ 1 erred when he ruled that Mrs. Keating could not establish her claim on lay evidence alone if her husband had worked fewer than ten years in the coal mines.

On modification petitions, ALJ 2, ALJ 3, and the Board twice on appeal, totally ignored Mrs. Keating's argument that ALJ 1 made a mistake of the ultimate fact -- that she was not entitled to benefits. The ALJs and the Board incorrectly ruled that the evidence could not be reconsidered.

Section 725.310, 20 C.F.R., provides in pertinent part:

---

[0] Keating concedes that because she did not challenge the calculation before the Board the third time, she waived argument that she is entitled to the interim presumption based on ten years of coal mine employment.

9

(a) Upon his or her own initiative, or upon the request of any party on grounds of a change in conditions or because of a mistake in a determination of fact, the deputy commissioner may, at any time before one year from the date of the last payment of benefits, or at any time before one year after the denial of a claim, reconsider the terms of an award or denial of benefits.

(b) . . . Additional evidence may be submitted by any party or requested by the deputy commissioner . . . .

20 C.F.R. § 725.310 (a) & (b).

The Director interprets the modification regulation as allowing an ALJ to reconsider the evidence in determining whether there was a mistake of fact, even the ultimate fact of entitlement. This is consistent with the modification regulation. Moreover, O'Keeffe v. AeroJet-General Shipyards, Inc., 404 U.S. 254, 92 S. Ct. 405 (1971), establishes that we should broadly construe the modification provision. In O'Keeffe, the Court interpreted the language from the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 922, which is incorporated into the Black Lung Benefits Act by 30 U.S.C. §932(a), and implemented by 20 C.F.R. § 725.310. It found that on its face the modification provision permits a reopening of the case with no limitation on particular factual errors. The plain language allows the deputy commissioner "broad discretion to correct mistakes of fact, whether demonstrated by wholly new evidence, cumulative evidence, or merely further reflection on the evidence initially submitted." 404 U.S. at 256, 92 S. Ct. at 407.

In Jessee v. Director, OWCP, 5 F.3d 723, 725 (4th Cir. 1993), interpreting 20 C.F.R. § 718.310, the court stated

10

a claimant may simply allege that the ultimate fact--disability due to pneumoconiosis--was mistakenly decided, and the [ALJ] may, if he so chooses, modify the final order on the claim. There is no need for a smoking-gun factual error, changed conditions, or startling new evidence.

Accord, Consolidation Coal Co. v. Worrell, 27 F.3d 227, 230 (6th Cir. 1994).

We agree with the Director that the regulation empowers an ALJ to make a de novo review of factual determinations on a modification petition. As the Director recognizes,

> [a]t a minimum, the [ALJ] must review all evidence of record -- any new evidence submitted in support of modification, as well as the evidence previously of record -- and "further reflect" on whether any mistakes [of] fact were made in the previous adjudication of the case.

Mrs. Keating argues, and the Director agrees, that she was entitled to have an ALJ properly determine her request for modification. ALJ 3 refused to consider her arguments, and contrary to O'Keeffe's instruction, protested that she was not entitled to have the evidence "reconsidered" on petition for modification. ALJ 3 erred by refusing to render de novo factual findings based on the lay evidence, and the Board erred by affirming on appeal.

### III.

Mrs. Keating requests that instead of remanding for yet another hearing, we simply direct an award of benefits to her on the record. We have done so in similar cases in which the result is foreordained, and will do so here. In Sulyma v. Director, OWCP, 827 F.2d 922 (3d Cir. 1987), the issue was the medical evidence's sufficiency to rebut the presumption of total

11

disability resulting from pneumoconiosis. We reversed the order of the Board and remanded the cause for an award of benefits, noting that case's protracted history. In Kline, a case that had gone on for nineteen years, we likewise awarded benefits after concluding that the record established the claimant's entitlement to benefits.

We found remand unnecessary in Kowalchick v. Director, OWCP, 893 F.2d 615 (3d Cir. 1990), after we concluded that the evidence could only support a finding that the claimant had established the presumption of disability under 20 C.F.R. § 727.203(a)(1), stating "this is a case where the record is so clear that under the correct standard the result is foreordained." 893 F.2d at 621 (internal quotations omitted). We found that "no purpose would be served in remanding [the] case ... and we therefore direct[ed] that benefits be awarded from the appropriate commencement date." Id. at 624.

Recently, in Bethenergy Mines Inc. v. Director, OWCP, 39 F.3d 458 (3d Cir. 1994), the Board reversed an ALJ's denial of benefits. Upholding the Board's decision, we commented:

> While the Board could have remanded the matter, we hardly can fault it for bringing these protracted proceedings to a close. Indeed, we followed a similar course in Sulyma v. Director, OWCP, 827 F.2d 922, 924 (3d Cir. 1987) . . . . [W]e would not remand the case. Rather, "in consideration of the age of" the case, we relied on our own view of the record and concluded that the presumption had not been rebutted.

39 F.3d at 464.

We will follow the wise counsel of those cases. This case has gone on far too long. Therefore, we will review the record

12

to determine if Mrs. Keating is entitled on this record to survivor benefits.

IV.

Although the Director concedes the credibility of the petitioner's witnesses, and the record shows no contrary evidence, the Director nonetheless maintains that the lay witnesses did not establish that John Keating at the time of his death suffered total disability resulting from pneumoconiosis from coal mine employment.  The Director acknowledges what the law provides:  that lay witnesses alone in pre-1982 cases may be sufficient to establish Mrs. Keating's claim, but suggests inferences from the lay evidence other than total disability or death from pneumoconiosis.  Notably, however, he fails to articulate just what those contrary inferences might be.  Indeed, we can find none.

Arguing against an outright award of benefits, the Director characterizes the evidence as merely relating the miner's symptoms and not establishing with specificity the physical requirements of the miner's usual coal mine work.  He questions whether the evidence of record suffices to support the required finding that the miner's condition prevented him from performing his usual coal mine work.[0]  We respond simply by noting that

_____

[0]Section 718.204(b), 20 C.F.R., provides:

> (b)Total disability defined . . . . [A] miner shall
> be considered totally disabled if pneumoconiosis as
> defined in section 718.201 prevents or prevented the
> miner:
> (1)From performing his or her usual coal mine work;
> and

13

nothing other than total disability, however, can reasonably be inferred from the evidence in this record.

The Director cites to cases from other Courts of Appeals in which the testimony failed to prove a totally disabling respiratory impairment. Those cases are inapposite. Each case must be decided on its own facts, and those cases were not decided on testimony as compelling as that Mrs. Keating offered.

The Director also argues that there is no evidence linking the miner's respiratory impairment to his coal mine employment, such as "that his cough was productive of black material." But, of course, there is no check list of required testimony. Obviously, the type of testimony considered sufficient would have to be short of medical testimony, otherwise lay testimony alone could never suffice.

Mrs. Keating can establish total disability resulting from pneumoconiosis by her affidavit or equivalent sworn testimony alone. Nonetheless, in addition to her sworn testimony, Mrs. Keating submitted the sworn testimony and affidavits of individuals familiar with the miner's condition, as provided for by 20 C.F.R. § 718.305(b),[0] and submitted the death certificate indicating anthracosilicosis.[0]

---

(2) From engaging in gainful employment in the immediate area of his or her residence requiring the skills or abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity over a substantial period of time.

[0] Section 718.305(b), 20 C.F.R., applies to pre-1982 cases and provides:

14

This evidence establishes that at the time of his death, the miner was not able to perform simple tasks, such as climbing stairs, because of his difficulty breathing. Most of the testimony involved personal observations of five individuals that the deceased had extreme difficulty breathing and a significant lack of energy. The evidence also documented his work in the coal mines for almost ten years, his repeated exposure to black coal dust, his medical treatment for his lungs during the last five years of his life, his inability to work which he attributed to his coal mine employment, and the presence of anthracosilicosis. Beyond question, Mrs. Keating established a record showing that the deceased suffered from pneumoconiosis arising from coal mine employment as required under the Act.

We conclude that Mrs. Keating is entitled to benefits because the Director concedes the lay evidence's credibility, and there is no contrary evidence. At the time of John Keating's death, he was totally disabled as a result of pneumoconiosis from coal mine employment. In light of the liberal policies behind the Act and the foregoing, Mrs. Keating is entitled to benefits.

V.

---

> In the case of a deceased miner, where there is no medical or other relevant evidence, <u>affidavits of persons having knowledge of the miner's condition shall be considered to be sufficient</u> to establish the existence of a totally disabling respiratory or pulmonary impairment for purposes of this section.

(Emphasis added).
[o]The definition of pneumoconiosis includes anthracosilicosis. 20 C.F.R. §§ 718.201 & 727.202.

15

Accordingly, we will grant the petition for review, reverse the Benefits Review Board and remand the cause for the limited purpose of awarding benefits to Mrs. Keating from August 1978.