OPINION
VANASKIE, Circuit Judge.
Eighty Four Mining Company petitions this Court to review the United States Department of Labor Benefits Review Board’s decision affirming an award of disability benefits to Charles Morris under the Black Lung Benefits Act (BLBA), 30 U.S.C. §§ 901-944. At issue is whether a state workers’ compensation board’s denial of pneumoconiosis benefits due to the repudiation of the claimant’s black lung diagnosis resets the BLBA three-year statute of limitations period. Eighty Four Mining argues that it does not and that the Administrative Law Judge and the Benefits Review Board erred as a matter of law by granting benefits to Morris. We disagree. Accordingly, we will deny Eighty Four Mining’s petition for review.
I.
The relevant facts are not in dispute. Morris worked as a coal miner for nearly thirty-five years, nineteen of which were spent working underground. His last position involved heavy labor, and Morris’s breathing difficulties eventually caused him to leave work. In 2006, Dr. Robert Cohen examined Morris and diagnosed him with pneumoconiosis (black lung disease). This diagnosis formed the basis of Morris’s state workers’ compensation claim for occupational disease benefits. Eighty Four Mining’s physician, Dr. Gregory Fino, also examined Morris, but he *310 determined that Morris’s breathing difficulties were caused by smoking. In this regard, Dr. Fino found that there was no radiographic evidence of pneumoconiosis, but there was evidence of emphysema, a condition caused by prolonged cigarette smoking.[1] In a decision dated March 31, 2008, a state Workers’ Compensation Judge concluded that Dr. Fino’s opinion was more credible than Dr. Cohen’s and that Morris “did not sustain an injury ... in the nature of coal workers’ pneumoconiosis or any other pulmonary injury.” (App.139.) Accordingly, Morris’s claim for workers’ compensation based upon pneumoconiosis was denied. Morris did not appeal that decision to the Pennsylvania Workers’ Compensation Appeal Board.
Morris’s breathing problems subsequently worsened and a doctor put him on oxygen nearly full-time. On January 6, 2011, Morris filed a claim for BLBA benefits. He did not rely upon the 2006 report of Dr. Cohen that had been discredited in the state workers’ compensation proceedings. Nor did he rely upon radiographic proof of pneumoconiosis. Instead, he relied upon a 2011 arterial blood gas study as well as pulmonary function testing that supported a finding of black lung disease. Eighty Four Mining opposed the application for benefits, contesting that it was barred by the statute of limitations because it was not filed within three years of receipt of Dr. Cohen’s 2006 report. Alternatively, it renewed the argument it had advanced in the state workers’ compensation proceedings that Morris’s pulmonary impairment was attributable to cigarette smoking and not due to coal dust exposure.
On July 9, 2013, an Administrative Law Judge (“ALJ”) granted benefits under the BLBA. The ALJ rejected the challenge to the timeliness of Morris’s BLBA claim on the basis of our decision in Helen Mining Co. v. Director, Office of Workers’ Compensation Programs, 650 F.3d 248 (3d Cir.2011) [hereinafter Obush}. In Obush, we held that a denial of federal black lung benefits due to the repudiation of the claimant’s pneumoconiosis diagnosis renders that diagnosis a “misdiagnosis” and resets the three-year statute of limitations for subsequent claims. Id. at 253-54. Under Obush, the ALJ determined that the state workers’ compensation board’s denial of Morris’s claim rendered Dr. Cohen’s 2006 diagnosis a “misdiagnosis” that did not trigger the statute of limitations under the BLBA. As to the merits of the claim, the ALJ determined that Morris sufficiently established the existence of pneumoconiosis through medical evidence obtained after 2010. The burden then shifted to Eighty Four Mining to rebut a presumption that Morris was totally disabled due to pneumoconiosis, either by showing that Morris .does not have pneumoconiosis or that his breathing difficulties “did not arise out of, or in connection with, employment in a coal mine.” 30 U.S.C. § 921(c)(4)(B). The ALJ concluded that Eighty Four Mining failed to adequately explain why Morris’s years of coal dust exposure were not a substantial cause of his pulmonary impairment. Accordingly, the ALJ found that Morris was entitled to an award of BLBA benefits.
Eighty Four Mining appealed to the Benefits Review Board. On July 25, 2014, the Board affirmed the award of benefits to Morris, but it did so based on a theory of judicial estoppel.[2] The Board deter *311 mined that because Eighty Four Mining had previously argued that Morris’s 2006 pneumoconiosis diagnosis was incorrect, it was inconsistent for Eighty Four Mining to rely now on that diagnosis as triggering the federal statute of limitations. Because judicial estoppel precluded Eighty Four Mining’s timeliness argument, the Board held that Morris’s claim was timely. The Board also concluded that the ALJ correctly rejected the opinions of Eighty Four Mining’s physicians that Morris’s pulmonary impairment was attributable only to smoking. Accordingly, the Board affirmed the benefits award. Eighty Four Mining timely petitioned this Court for review of the Board’s decision, challenging only the ruling that Morris’s BLBA claim is timely.
II.
We have jurisdiction over final orders from the Benefits Review Board under 33 U.S.C. § 921(c), as incorporated by 30 U.S.C. § 932(a). Obush, 650 F.3d at 251 n. 4 (quoting Labelle Processing Co. v. Swarrow, 72 F.3d 308, 310 (3d Cir.1995)). We exercise plenary review over questions of law. Id. (citing Swarrow, 72 F.3d at 313).
III.
Congress enacted the BLBA to “provide benefits ... to coal miners who are totally disabled due to pneumoconiosis.” 30 U.S.C. § 901(a). Under the BLBA, “ ‘pneumoconiosis’ means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment.” 30 U.S.C. § 902(b). The legislation and implementing regulations explicitly acknowledge that pneumoconio-sis is both a latent and a progressive disease. See Consolidation Coal Co. v. Williams, 453 F.3d 609, 616 (4th Cir.2006) (citing 20 C.F.R. § 718.201(c)). In this respect, the legislation does not “bar claimants from filing claims seriatim, and the regulations recognize that many will.” Id. (quoting Lisa Lee Mines v. Dir., Office of Workers’ Comp. Programs, 86 F.3d 1358, 1362 (4th Cir.1996)).
While allowing for serial claims in light of the progressive nature of the disease, the legislation does impose a limitations period for filing a claim. To maintain a timely BLBA claim, a miner must file a claim within three years of receiving a “medical determination” of pneumoconiosis. See 30 U.S.C. § 932(f). This “medical determination” must be “communicated to the miner” before the statute of limitations will begin to run. See 20 C.F.R. § 725.308(a). Neither the legislation nor the implementing regulations, however, define the term “medical determination.” See Arch of Ky., Inc. v. Dir., Office of Workers’ Comp. Programs, 556 F.3d 472, 481 (6th Cir.2009). The question that arises is whether a diagnosis of pneumoconiosis that is rejected in an adjudicated proceeding nonetheless constitutes a “medical determination” that triggers the statute of limitations for bringing a claim for BLBA benefits.
In Obush, we answered that question in the negative, holding that the denial of an initial BLBA claim renders a prior pneu-moconiosis diagnosis a “misdiagnosis” that will “reset the limitations clock as to subsequent claims.” 650 F.3d at 253. Specifically, we concluded as a matter of law that a medical diagnosis of pneumoconiosis rejected by an ALJ in a BLBA proceeding “cannot be a ‘medical determination’ of pneumoconiosis, as set out in section 932.” Id. We reasoned that res judicata required us to accept a prior ALJ’s denial of black *312 lung benefits as a determination that the claimant’s pneumoconiosis diagnosis was a “misdiagnosis.” Id. at 252 (discussing Swarrow, 72 F.3d at 314). In so doing, we emphasized that “courts have repeatedly recognized that the remedial nature of the statute requires a liberal construction of the Black Lung entitlement program to ensure widespread benefits to miners and their dependents.” Id. (quoting Keating v. Dir., Office of Workers’ Comp. Programs, 71 F.3d 1118, 1122 (3d Cir.1995)); see also Pavesi v. Dir., Office of Workers’ Comp. Programs, 758 F.2d 956, 965 (3d Cir.1985) (“[T]he Act must be applied in a manner which assures compensation to every miner who suffers from any of the several lung impairments covered by the Black Lung Benefits Act.”). We also explained that the progressive nature of pneumoconi-osis favors “reading the statute of limitations in an expansive manner to ensure that any miner ... afflicted with the disease, including its progressive form, is given every opportunity to prove he is entitled to benefits.” See Obush, 650 F.3d at' 253. Lastly, we opined that “a restrictive interpretation of the statute of limitations ... would be in tension with the regulation that enables miners to file subsequent claims.” Id. “The very fact that successive claims are permitted — on evidence of material changes to the health of a miner— makes an interpretation of the statute of limitations that effectively precludes such claims untenable.” Id.
Eighty Four Mining argues that Obush does not control the present case because Obush involved a subsequent federal claim after the initial diagnosis was repudiated in a federal proceeding, whereas the present case involves an initial federal claim after the diagnosis of pneumoconiosis was repudiated by a workers’ compensation judge in a state proceeding. This argument seizes upon Obush’s discussion of res judicata and ignores our statute of limitations analysis, which focuses on what constitutes a “medical determination” of pneu-moconiosis. We necessarily held in Obush that a rejected diagnosis is not a “medical determination.” Thus, under Obush, a denial of BLBA benefits as a result of an adjudicator’s repudiation of the pneumoco-niosis diagnosis resets the statute of limitations for subsequent claims, which begins to run again from a later diagnosis.
The opinion of our dissenting colleague also overplays the role of res judicata in Obush. The central holding of Obush is that a misdiagnosis does not start the limitations period — or, to put it another way, the statute of limitations resets upon discovery that'an earlier diagnosis was a misdiagnosis, and the limitations period does not start again until a later diagnosis has been made. Although the principles of res judicata were applied to hold that the rejection of the original diagnosis was final, the ultimate holding that the original diagnosis was not a “medical determination” for purposes of triggering the statute of limitations did not spring from the conclusive effect of the ALJ’s decision in the first proceeding. Rather, Obush relied upon (a) the fundamental understanding that “the remedial nature of the statute requires a liberal construction of the Black Lung entitlement program to ensure widespread benefits to miners and their dependents,” see id. at 252 (quoting Keating, 71 F.3d at 1122); (b) the recognition that “ ‘pneumo-coniosis’ is ... a latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure,” see id. at 253 (quoting 20 C.F.R. § 718.201); and (c) the fact that successive claims are permitted— “makfing] an interpretation of the statute of limitations that effectively precludes such claims untenable.” See id. As the Sixth Circuit Court of Appeals put it:
*313 The statute of limitations exists to promote the quick filing of worthy claims. It -does not exist as a trap for the unwary or unsophisticated miner. Given the recognized ‘latent and progressive’ nature of the disease, 20 C.F.R. § 718.201(c), a restrictive interpretation of ‘medical diagnosis’ is unwarranted because it would, in effect, penalize a miner who sought a consultation too soon and received a determination from a physician who decided to err on the side of aggressive diagnosis. Holding the miner responsible for a genuine misdiagnosis unjustly holds him responsible for the principled medical judgment of a doctor, presumably far more skilled and educated than the miner.
Arch of Ky., .556 F.3d at 482 (emphasis in original) (quotation marks and citation omitted).
The question here is how to apply the central holding in Obush that a misdiagnosis does not constitute a “medical determination” sufficient to trigger the statute of limitations — that is, we must determine whether there has been a misdiagnosis that resets that statute of limitations. The core concept behind the holding that a misdiagnosis resets the statute of limitations is that a miner presumably cannot self-diagnose black lung disease — he must instead rely upon the expertise of those “presumably far more skilled and educated than the miner.” See id. (quoting Peabody Coal Co. v. Dir., Office of Workers’ Comp. Programs, 48 Fed.Appx. 140, 146 (6th Cir.2002)). When a state adjudicator repudiates a diagnosis of black lung disease, a miner cannot himself determine the correctness of that conclusion. To hold that the state adjudicator’s determination does not reset the statute of limitations would be to hold the miner responsible for determining not just whether his doctor made a correct diagnosis, but for determining whether the state adjudicator correctly determined that that diagnosis was incorrect. This “trap for the unwary or unsophisticated miner” is precisely the reason why a diagnosis repudiated in a contested adjudication does not trigger the statute of limitations. See id.
Here, Morris’s state workers’ compensation claim was denied because the adjudicator repudiated his doctor’s diagnosis of pneumoconiosis. Indeed, the state Workers’ Compensation Judge specifically concluded that Morris “did not sustain an injury ... in the nature of coal workers’ pneumoconiosis or any other pulmonary injury.” (App.139.) The rejection of Dr. Cohen’s diagnosis is indistinguishable from the denial of the initial black lung benefits claim in Obush.
Thus, we hold that the rejection of a claim in which the adjudicator repudiates a medical determination of pneumoconiosis means that a subsequent claim filed within three years of receipt of a new medical determination establishing the existence of pneumoconiosis will not be barred as untimely, regardless of whether the first claim was filed under a state workers’ compensation law or under the BLBA.[3] Our dissenting colleague is correct in pointing out that our decision today rests primarily on the liberal interpretation to be accorded the BLBA.' But so too did *314 Obush rely upon that fundamental principle in holding that a “medical determination” of pneumoconiosis is not a “medical determination” for purposes of the statute of limitations when it is repudiated in an adjudicated BLBA proceeding. To hold otherwise in this case would mean that Morris’s second claim would be timely if he had initially unsuccessfully sought BLBA benefits but is untimely because he first elected to pursue state workers’ compensation benefits. Such a difference in result is untenable. Indeed, given the latent and progressive nature of pneumoconiosis, an early diagnosis of the disease will often be deemed a misdiagnosis. See 20 C.F.R. § 718.201(c) (recognizing pneumoconiosis “as a latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure.”). As we reasoned in Obush, this consideration supports “reading the statute of limitations in an expansive manner to ensure that any miner who has been afflicted with the disease, including its progressive form, is given every opportunity to prove he is entitled to benefits.” See 650 F.3d at 253.
In light of these considerations, it is immaterial that Morris’s first claim was filed under a state workers’ compensation law. Rather, what matters is that Morris’s initial claim was denied on the basis that he did not have pneumoconiosis. See Peabody Coal Co. v. Dir., Office of Workers’ Comp. Programs, 718 F.3d 590, 595 (6th Cir.2013) [hereinafter Brigance ] (“The misdiagnosis rule applies only ‘if a miner’s claim is ultimately rejected on the basis that he does not have the disease.’ ”). As a result, when Morris’s condition worsened and he filed a BLBA claim within three years of receiving a new medical determination of pneumoconiosis, his BLBA claim was timely. Thus, we will affirm the Board’s award of benefits to Morris and deny Eighty Four Mining’s petition for review.[4]
IV.
For the foregoing reasons, we will deny the petition for review and affirm the Department of Labor Benefits Review Board’s Decision and Order of July 25, 2014.

. Morris had been a heavy cigarette smoker, smoking a pack and a half of cigarettes per day for approximately 40 years.

. Administrative Appeals Judge Roy Smith dissented from the Board’s decision, stating that he would have denied benefits because Morris’s claim was untimely and that it was *311 inappropriate to rely on judicial estoppel or Obush to determine otherwise.

. Because we are not relying on res judicata for our decision today, we need not address the state workers' compensation board's process and standards. What matters is that the diagnosis of pneumoconiosis Was repudiated, as our holding is merely that a workers' compensation judge’s repudiation of a diagnosis of pneumoconiosis will réset the statute of limitations. For this reason, our dissenting colleague's fear that a ruling in favor of a miner in a state workers’ compensation proceeding would mandate a finding in favor of that miner in a BLBA proceeding is unfounded.

. As noted above, the Board did not rely upon Obush, but instead applied judicial estoppel to find that Morris’s claim was timely. We reject the Board’s judicial estoppel rationale. For judicial estoppel to apply, a litigant must have advanced irreconcilably inconsistent positions. It is not irreconcilably inconsistent to argue both that a diagnosis was incorrect and that the diagnosis nevertheless starts the statute of limitations clock. Cf. Brigance, 718 F.3d at 594 (“The limitations period begins to run when a medical determination of total disability due to pneumoconiosis is communicated to the miner. Whether the diagnosis is well-reasoned or otherwise accurate (whether the miner is in fact totally disabled due to pneumoconiosis) is irrelevant for purposes of the statute of limitations.”).