**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-3069
_____

CONSOL PENNSYLVANIA COAL COMPANY,
Petitioner

v.

RANDALL F. MCMILLIN; DIRECTOR OFFICE OF WORKERS
COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR
_____

On Petition for Review of an Order of the
Benefits Review Board
(BRB No. 22-0148 BLA)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 2, 2024
_____

Before: SHWARTZ, MATEY, and McKEE, Circuit Judges.

(Filed: January 6, 2025)
_____

OPINION[*]
_____

SHWARTZ, Circuit Judge.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Consol Pennsylvania Coal Company petitions for review of a decision of the Benefits Review Board granting former coal miner Randall McMillin benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-944 (the "BLBA"). For the following reasons, we will deny Consol's petition.

I

A

To understand the dispute between the parties, we first review the BLBA's statutory and regulatory scheme. The BLBA is a liberally construed remedial statute administered by the Department of Labor ("DOL") that provides benefits to coal miners whose exposure to coal dust has resulted in pneumoconiosis,[1] commonly known as black lung disease. Helen Mining Co. v. Elliott, 859 F.3d 226, 229 (3d Cir. 2017); Eighty Four Mining Co. v. Dir., Off. of Workers' Comp. Programs, 812 F.3d 308, 312 (3d Cir. 2016) ("Morris"); see also 30 U.S.C. §§ 901-944; 20 C.F.R. §§ 718.202-204.

To obtain benefits, a miner must show that (1) he has "clinical" or "legal" pneumoconiosis,[2] (2) the pneumoconiosis arose out of coal mine employment, (3) he has

---

[1] Pneumoconiosis is "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 20 C.F.R. § 718.201(a).

[2] Clinical pneumoconiosis includes "conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment." 20 C.F.R. § 718.201(a)(1). Legal pneumoconiosis is more broadly defined as "any chronic lung disease or impairment and its sequelae arising out of coal mine employment," including but not limited to "any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment." Id. § 718.201(a)(2).

2

a totally disabling respiratory or pulmonary impairment that prevents him from performing coal mining or comparable work, and (4) the pneumoconiosis is a substantially contributing cause of the total disability. Elliott, 859 F.3d at 229; see 20 C.F.R. §§ 718.202-04 (establishing requirements for BLBA eligibility), 725.202(d) (listing requirements for obtaining BLBA benefits). BLBA claimants employed at a coal mine for fifteen years or more and who present evidence demonstrating "the existence of a totally disabling respiratory or pulmonary impairment" are entitled to a presumption that they are "totally disabled due to pneumoconiosis." 30 U.S.C. § 921(c)(4); see 20 C.F.R. § 718.305(b)(1) (explaining how to invoke the presumption). The employer may rebut this presumption if it establishes that (1) the miner does not have pneumoconiosis, or (2) no part of the miner's respiratory or pulmonary disability was caused by pneumoconiosis. 20 C.F.R. § 718.305(d)(1)(i)-(ii).

B

McMillin worked as a coal miner for at least thirty-five years. In December 2012, he consulted his physician, Dr. Attila Lenkey, because of breathing problems, and the doctor concluded that McMillin had chronic obstructive pulmonary disease ("COPD"), due in part to his exposure to coal mine dust, and that he should cease coal mining immediately ("December 2012 Diagnosis"). McMillin quit mining that month.

In February 2013, McMillin filed a claim for BLBA benefits ("February 2013 Claim"). A DOL physician conducted a medical examination, following which the DOL District Director issued a proposed order in October 2013, set to become final thirty days

3

thereafter, denying the February 2013 Claim in part because McMillin did not show that he had pneumoconiosis ("October 2013 Decision").[3] McMillin thereafter withdrew his February 2013 Claim.

In September 2014, Dr. Lenkey again evaluated McMillin and concluded that black lung disease had "100% impaired and disabled" him ("September 2014 Diagnosis"). AR 68.

In May 2017, McMillin filed another BLBA claim ("May 2017 Claim"), and underwent several medical examinations. Dr. Charles Feicht, who examined McMillin at DOL's request, diagnosed McMillin with severe COPD and determined that he was 100% disabled from a pulmonary perspective, with 60% of the disability from coal dust exposure and 40% from his smoking history.[4] Dr. Feicht also acknowledged that because coal dust exposure and smoking both cause lung damage, it is difficult to discern causation when both factors are at play.

Dr. Leonard Go, who examined McMillin at McMillin's request, diagnosed McMillin with legal pneumoconiosis, specifically COPD, emphysema, and chronic bronchitis, attributing the diagnosis to McMillin's thirty-five years of coal mine

---

[3] The District Director relied primarily on the DOL physician's examination and did not mention the December 2012 Diagnosis. It is not clear from the record whether McMillin submitted Dr. Lenkey's report embodying the December 2012 Diagnosis with his February 2013 Claim.

[4] Although Dr. Feicht considered the results of a chest x-ray, arterial blood gas tests, and spirometry tests, he concluded that McMillin did not have clinical pneumoconiosis, which is one way for a miner to obtain benefits under the BLBA, the other being a diagnosis of legal pneumoconiosis, 20 C.F.R. § 718.201(a).

4

employment and smoking history.  He concluded that the pneumoconiosis contributed to McMillin's total pulmonary disability, with smoking and obesity as contributing factors.[5]

Dr. George Zalvidar, who examined McMillin at Consol's request, observed that McMillin's prolonged exposure to coal dust could cause pneumoconiosis, but concluded that McMillin had asthma and emphysema caused by obesity and smoking, not pneumoconiosis, because: (1) McMillin began smoking at sixteen, which increased his likelihood of developing lung problems; (2) smoking is the leading cause of emphysema worldwide; (3) silica and coal are non-allergenic and would not cause McMillin's asthmatic symptoms and wheezing; and (4) obesity causes asthma.

The Director issued a proposed decision granting the May 2017 Claim, and Consol sought review by an Administrative Law Judge ("ALJ"), asserting that McMillin's claim was untimely and without merit.  The ALJ awarded benefits, concluding that McMillin timely filed the May 2017 Claim because (1) under the misdiagnosis rule, a previous diagnosis that has been repudiated does not trigger the statute of limitations; (2) the October 2013 Decision repudiated the December 2012 Diagnosis; and thus (3) the December 2012 Diagnosis did not trigger the statute of limitations.  The ALJ then determined that McMillin was entitled to benefits because Consol failed to (1) rebut the

---

[5] Dr. Go considered numerous studies about coal dust exposure and McMillin's chest x-rays, as well as the results of arterial blood gas and spirometry tests.

BLBA presumption[6] that McMillin had totally disabling pneumoconiosis, and (2) show

that no part of his disability was due to his history of coal mine dust exposure.

The Board affirmed, determining that (1) the December 2012 Diagnosis did not

trigger the statute of limitations for the May 2017 Claim because it was repudiated by the

October 2013 Decision and hence was a misdiagnosis, and (2) Consol failed to rebut the

presumption that McMillin had totally disabling pneumoconiosis.

Consol petitions for review.

II[7]

A

We first examine whether McMillin's claim was timely. A miner must file a

BLBA claim within three years of receiving a medical determination of total disability

due to pneumoconiosis. 30 U.S.C. § 932(f).[8] Consol incorrectly asserts that the

December 2012 Diagnosis is the relevant "medical determination," and thus, the three-

---

[6] Consol did not dispute the applicability of the presumption before the ALJ.

[7] The Board had jurisdiction to review the ALJ's final order under 33 U.S.C. § 921(b)(3). We have jurisdiction over the Board's final order under 33 U.S.C. § 921(c). "The [Board] is bound by an ALJ's findings of fact if they are rational, supported by substantial evidence, and consistent with applicable law." Plesh v. Dir., Off. of Workers' Comp. Programs, 71 F.3d 103, 107 (3d Cir. 1995) (internal quotation marks omitted). "We review the [Board]'s decision to ensure that [it] has accepted those findings of the ALJ that are supported by substantial evidence," and "[w]e exercise plenary review over questions of law." Id. at 107-08. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted).

[8] Neither the BLBA nor its implementing regulations define "medical determination." Morris, 812 F.3d at 311.

6

year statute of limitations bars the May 2017 Claim. The District Director issued the October 2013 Decision, finding that McMillin did not have pneumoconiosis. Because the denial of a claim due to a claimant's failure to establish he had pneumoconiosis renders an earlier pneumoconiosis diagnsosis a "misdiagnosis," the December 2012 Diagnosis was not a "medical determination" that triggered the statute of limitations. Morris, 812 F.3d at 311, 314 (applying the misdiagnosis rule where the claim was "denied on the basis that [the applicant] did not have pneumoconiosis"); Helen Mining Co. v. Dir., Off. of Workers' Comp. Programs, 650 F.3d 248, 253-54 (3d Cir. 2011) ("Obush") (same).

McMillin's withdrawal of his claim after the DOL issued the October 2013 Decision, but before that decision became final, does not disturb this conclusion. Cf. Morris, 812 F.3d at 313-14 (concluding that the denial of a state workers' compensation claim repudiates a prior diagnosis and thus is not a "medical determination" that triggers the statute of limitations). To penalize McMillin for not waiting for his claim to be formally dismissed would conflict with (1) the requirement to read the BLBA broadly to effectuate its remedial purpose, Obush, 650 F.3d at 253; and (2) the regulation that enables miners to file subsequent claims because pneumoconiosis is a latent and progressive disease which lends itself to misdiagnoses, id. (citing 20 C.F.R. § 725.309(d)

(allowing successive benefit claims)).[9]  Thus, McMillin's May 2017 Claim is not barred

by the statute of limitations.[10]

[9]  Our dissenting colleague's concern that our application of the misdiagnosis rule here would allow miners to evade the procedures for filing subsequent claims as provided in 20 C.F.R. § 725.309(c), is not present here as McMillin satisfies these requirements. First, evidence submitted in connection with McMillin's first claim (the February 2013 Claim) was part of the record before the ALJ in connection with his subsequent claim (the May 2017 Claim).  20 C.F.R. § 725.309(c)(2).  Second, McMillin met the "applicable conditions of entitlement[, which] are limited to those conditions upon which the prior denial was based,"  20 C.F.R. § 725.309(c)(3), as his first claim was denied because the evidence did not show (1) he had pneumoconiosis, (2) the disease was caused, at least in part, by coal mine work, and (3) the disease caused a breathing impairment that amounted to a total disability within the meaning of the regulations.  His second claim was granted because DOL determined (1) McMillin contracted pneumoconiosis due to his coal mine employment and (2) the disease caused a breathing impairment to establish total disability within the meaning of the BLBA.  Third, McMillin submitted "new evidence . . . in connection with the subsequent claim [that] establishe[d] at least one applicable condition of entitlement, 20 C.F.R. § 725.309(c)(4), specifically, additional medical evidence and testimony supporting his pneumoconiosis diagnosis claim for benefits.  The final procedural requirements of subsequent claims— that findings associated with the prior claim are not preclusive once a claimant demonstrates a change in the applicable conditions of entitlement, and that no duplicate benefits shall be paid for concurrent periods of eligibility—is satisfied as there were no findings that would have been preclusive because McMillin demonstrated a change in applicable conditions of entitlement, and he was not receiving duplicate (or any) benefits.  20 C.F.R. § 725.309(c)(4)-(5).

[10] Consol also argues that the misdiagnosis rule does not apply because McMillin did not submit Dr. Lenkey's initial report concluding that McMillin should not return to work because of his severe COPD, which was the basis of the December 2012 Diagnosis, with his initial February 2013 Claim.  However, the relevant inquiry is whether the initial claim was rejected, not whether a particular medical record containing a diagnosis was submitted.  See Morris, 812 F.3d at 308 (stating that the rejection of a claim renders a prior diagnosis a misdiagnosis); Consolidation Coal Co. v. Williams, 453 F.3d 609, 616 (4th Cir. 2006) (holding the misdiagnosis rule applied, even where the adjudicator never received the miner's initial diagnosis of pneumoconiosis, because the "legal determination that [the applicant] was not totally disabled due to coal workers's pneumoconiosis . . . necessarily refuted [this] diagnosis"); Peabody Coal Co. v. Dir., Off. of Workers' Comp. Programs, 48 F. App'x 140, 146 (6th Cir. 2002) (nonprecedential)

B

We next address whether the Board erred in awarding McMillin benefits. Consol does not dispute that McMillin is disabled by lung disease and thus is entitled to the presumption that he is totally disabled due to pneumoconiosis. Therefore, to prevail, Consol must rebut the presumption by offering "persuasive evidence" that (1) McMillin does not have legal pneumoconiosis,[11] by showing that his impairment is not "significantly related to, or substantially aggravated by, dust exposure in coal mine employment," 20 C.F.R. § 718.201(a)(2), (b); and (2) "no part" of McMillin's disability was caused by pneumoconiosis, which Consol must show by "ruling out" any connection between the pneumoconiosis and his disability,[12] 20 C.F.R. § 718.305(d)(1)(ii); Elliott, 859 F.3d at 232, 241 (discussing the "rule out" standard); see also Kertesz v. Crescent Hills Coal Co., 788 F.2d 158, 163 (3d Cir. 1986) (requiring the party opposing the benefits to point to "persuasive evidence" to rebut the presumption of disability).

Consol points to Dr. Zalvidar's conclusion that McMillin had asthma and emphysema caused by smoking and obesity, not pneumoconiosis, to rebut the presumption. The Board, however, correctly concluded that the ALJ acted within its

---

("[I]f a miner's claim is ultimately rejected on the basis that he does not have the disease, this finding necessarily renders any prior medical opinion to the contrary invalid, and the miner is handed a clean slate for statute of limitation purposes.").

[11] Because there is no challenge to the conclusion that McMillin did not have clinical pneumoconiosis, we review only the conclusion that Consol failed to rebut the presumption that McMillin had legal pneumoconiosis.

[12] The ALJ and Board applied the correct standard in evaluating whether Consol met its burden and any argument to the contrary lacks merit.

discretion when it afforded Dr. Zalvidar's opinion less weight because he did not adequately consider the effects of McMillin's long history of coal dust exposure on his respiratory illnesses, particularly given that legal pneumoconiosis's broad definition encompasses any pulmonary disease arising out of coal mine employment. See 20 C.F.R. § 718.201(a)(2); Lango v. Dir., Off. of Workers' Comp. Programs, 104 F.3d 573, 578 (3d Cir. 1997) (holding an ALJ "may disregard a medical opinion that does not adequately explain the basis for its conclusion"). Further, the ALJ and Board appropriately discredited Dr. Zalvidar's conclusions as inconsistent with McMillin's test results showing his respiratory difficulty, and the various studies and BLBA regulations establishing that significant coal mine dust exposure is a major contributor to pneumoconiosis. See Kertesz, 788 F.2d at 163 ("[T]he ALJ should reject as insufficiently reasoned any medical opinion that reaches a conclusion contrary to objective clinical evidence without explanation."); Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as amended, 65 Fed. Reg. 79920-01 , 79.940 (Dec. 20, 2000) (noting that smoking and coal dust exposure can be additive in causing lung disease). Thus, substantial evidence supports the Board's conclusion that McMillin had legal pneumoconiosis.

Additionally, the Board and ALJ correctly concluded that Consol did not adduce evidence that ruled out coal dust as a cause of McMillin's pneumoconiosis. Dr. Zalvidar did not explain how McMillin's long term exposure to coal dust could have played no role in his condition. Drs. Go and Feicht, on the other hand, offered well-reasoned

10

opinions which (1) were consistent with objective medical evidence concerning McMillin's serious breathing difficulties, (2) attributed McMillin's respiratory illnesses to both coal dust exposure and smoking, and (3) still accounted for McMillin's other health issues. Thus, substantial evidence supports the finding that Consol failed to establish that McMillin's exposure to coal dust played no part in his pneumoconiosis. See 20 C.F.R. § 718.305(d)(1)(ii).

Accordingly, the Board properly concluded that Consol failed to rebut the presumption that McMillin was totally disabled due to pneumoconiosis, and therefore, correctly awarded benefits.

III

For the foregoing reasons, we will deny the petition.

MATEY, *Circuit Judge*, dissenting.

Congress passed the Black Lung Benefits Act (BLBA) to assist coal miners afflicted with pneumoconiosis, also known as black lung disease. But pneumoconiosis is often difficult to diagnose accurately because its symptoms mirror other illnesses. And pneumoconiosis is "a latent and progressive disease," 20 C.F.R. § 718.201(c), so indicators may not appear until years after a miner leaves the mines. Not surprisingly, reasonable people—including physicians—often disagree on a diagnosis.

The BLBA addresses this uncertainty by requiring claims to "be filed within three years" of "a medical determination of total disability due to pneumoconiosis." 30 U.S.C. § 932(f).[1] So what happens if a miner receives a "medical determination" later "determined" to be incorrect? Enter the so-called "misdiagnosis rule," a judicial gloss on the BLBA providing that an administrative determination that a miner does not have pneumoconiosis erases the existence of the initial diagnosis and "reset[s] the limitations clock." *Helen Mining Co. v. Dir. OWCP* (*Obush*), 650 F.3d 248, 253 (3d Cir. 2011); *see Eighty Four Mining Co. v. Dir., Off. of Workers' Comp. Programs* (*Morris*), 812 F.3d 308, 312 (3d Cir. 2016). Whatever the merits of the rule,[2] it is only triggered by a final

---

[1] The implementing regulation provides that the limitations period begins to run when the "medical determination of total disability due to pneumoconiosis . . . has been communicated to the miner or a person responsible for the care of the miner." 20 C.F.R. § 725.308(a).

[2] In the future, we should reconsider the misdiagnosis rule, as it finds no support in statute or regulation. Despite the BLBA's requirement that all claims "be filed within three years" of "a medical determination of total disability due to pneumoconiosis," 30 U.S.C. § 932(f), the misdiagnosis rule treats a subsequent administrative disagreement as

administrative decision denying a miner's claim. But in this case, the majority extends the misdiagnosis rule to a proposed claim denial. Respectfully, that threatens to further upset the balance between finality and fairness created by Congress and appears to eliminate the unique requirements applicable to claims that follow the first administrative denial of a miner's claim. As neither the BLBA nor our precedents compel this extension, I would reverse the Benefits Review Board's decision.

---

sufficient to erase the existence of the medical determination. In other words, a diagnosis made by a physician retroactively vanishes when an ALJ disagrees with the physician. But a "legal professional's ruling on th[e] medical determination is incidental" to whether such a medical determination was made. *Peabody Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 48 F. App'x 140, 151 (6th Cir. 2002) (Batchelder, J., dissenting). The misdiagnosis rule is misguided because nothing in the BLBA requires agreement between the diagnosing physician and the ALJ, and such a requirement effectively merges timeliness and the merits into a single inquiry.

So how did we get here? Our prior decisions did not explain the departure from the ordinary meaning of "medical determination" in the BLBA. In *Obush*, we grounded the misdiagnosis rule in preclusion, 650 F.3d at 252, but later retreated from that logic in *Morris*, 812 F.3d at 313 n.3. We have also noted that "a restrictive interpretation of the statute of limitations . . . would be in tension with the regulation that enables miners to file subsequent claims." *Obush*, 650 F.3d at 253. But when a statute and regulation conflict, "the statute must, of course, prevail." *Pennsylvania v. U.S. Dep't of Health & Human Servs.*, 80 F.3d 796, 809 (3d Cir. 1996). That leaves the observation that the BLBA is a "remedial" statute that "requires a liberal construction of the Black Lung entitlement program to ensure widespread benefits to miners and their dependents." *Obush*, 650 F.3d at 252 (quoting *Keating v. Dir., Off. of Workers' Comp. Programs*, 71 F.3d 1118, 1122 (3d Cir. 1995)); *accord Morris*, 812 F.3d at 313. But we do not read statutes with a strict or liberal eye, and "the text of a law controls over purported legislative intentions unmoored from any statutory text." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 364 (2012) ("The false notion that remedial statutes should be liberally construed . . . needlessly invites judicial lawmaking.").

2

# I.

This Court has twice recognized a misdiagnosis rule. In *Obush*, we held that a Department of Labor ALJ's "final denial" of a miner's claim that "explicitly discredit[s]" an earlier diagnosis "reset[s] the limitations clock as to subsequent claims" because the ALJ's decision renders the diagnosis a "misdiagnosis [that] cannot be a 'medical determination' of pneumoconiosis." 650 F.3d at 253 (quoting 30 U.S.C. § 932(f)). Later, in *Morris*, we extended the misdiagnosis rule to cases in which the miner's diagnosis is purportedly repudiated by the denial of a state workers' compensation claim. 812 F.3d at 312. But until today, we have never recognized non-final administrative action as sufficient to reset the limitations clock. The majority argues that McMillin's withdrawal of his claim before final adjudication "does not disturb" application of the misdiagnosis rule. Maj. Op. at 7. Respectfully, I disagree.

Start with the facts. In 2013, the District Director issued a "Proposed Decision and Order" which contained a "PROPOSED DENIAL OF BENEFITS." App. 97–98. As provided by regulation, the Proposed Decision and Order explained that McMillin could "request a revision of the Proposed Decision and Order" by "specifying the points with which [he] disagree[d]." App. 96. In other words, the Proposed Decision and Order was an interim step, not a final determination. *See* 20 C.F.R. § 725.419. The distinction between preliminary and final decisions matters since a claim withdrawn before a final decision and order has been issued is "considered not to have been filed." 20 C.F.R. § 725.306(b).

3

That is important because "the adjudication of a subsequent claim is subject to special procedures" under 20 C.F.R. § 725.309(c) ("Subsequent Claims Regulation"). *Energy W. Mining Co. v. Oliver*, 555 F.3d 1211, 1215 (10th Cir. 2009) (Gorsuch, J.). For example, a miner "is required to submit newly developed evidence to ensure that he is not merely relitigating the prior claim." *Buck Creek Coal Co. v. Sexton*, 706 F.3d 756, 759 (6th Cir. 2013); *see* 20 C.F.R. § 725.309(c)(4). And if a miner "prevails, his or her benefits are limited to the period after the prior claim was denied." *Energy W. Mining Co.*, 555 F.3d at 1215; *see* 20 C.F.R. § 725.309(c)(6). Thus, the Subsequent Claims Regulation promotes a delicate balance. By allowing miners to file subsequent claims, the regulation accommodates the reality that "pneumoconiosis is a latent and progressive disease, from which a miner's condition may deteriorate over time." *U.S. Steel Mining Co., LLC v. Dir., OWCP*, 386 F.3d 977, 979 (11th Cir. 2004). At the same time, the heightened evidentiary requirements and prohibition of pre-denial benefits respect the finality of the denial of the miner's earlier claim. *See Buck Creek Coal Co.*, 706 F.3d at 759–60; *Union Carbide Corp. v. Richards*, 721 F.3d 307, 317 n.5 (4th Cir. 2013).

Extending the misdiagnosis rule to non-final adjudications defeats the Subsequent Claims Regulation and the balance that it promotes. That is because a miner need only satisfy the evidentiary "prerequisites for subsequent claims," *Canterbury Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 463 F. App'x 90, 92 (3d Cir. 2012), after "a final order denying" the initial claim has been issued, 20 C.F.R. § 725.309(c). The same is true of the prohibition of pre-denial benefits: it only applies after "the date upon which the order denying the prior claim became final." 20 C.F.R. § 725.309(c)(6). So extending the

4

misdiagnosis rule to proposed decisions seems to allow miners to evade the Subsequent

Claims Regulation.[3]

## II.

The existing misdiagnosis rule applies only to final adjudications. Seeing no basis

in statute or regulation to extend the rule to proposed decisions, I would reverse the

Benefits Review Board's decision and so respectfully dissent.

---

[3] The majority hypothesizes that if McMillin's initial claim had been finally denied, his second claim might have satisfied the standards in 20 C.F.R. § 725.309(c). Perhaps, but how the ALJ might have resolved that claim using a regulation never considered is not at issue. What is presented is the meaning of 30 U.S.C. § 932(f) and our prior decisions. My concern is not McMillin's claim, but the many claims to follow that might now avoid the rigors of § 725.309(c).